432 P.2d 593

**Westbrook PEGLER and Maud Pegler,
husband and wife, Appellants,**

**v.**

**Ed SULLIVAN and Random House, Inc.,
a corporation, Appellees.**

**2 CA–CIV 393.**

Court of Appeals of Arizona.

Oct. 24, 1967.

Rehearing Denied Nov. 15, 1967.

Review Denied Dec. 12, 1967.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by Thomas Chandler, Tucson, for appellees.

JACK G. MARKS, Superior Court Judge.

This is an appeal by the plaintiffs Westbrook Pegler and his wife Maud from an amended order and judgment of the superior court of Pima County dismissing their complaint against two of the defendants—Ed Sullivan and Random House, Inc., a New York corporation—on the ground of insufficiency of the service of process. The defendant Random House, Inc. (hereinafter sometimes called Random House) was served in New York City, New York, by United States registered mail on January 22, 1965, and, thereafter, on March 8, 1965, the defendant Ed Sullivan (hereinafter sometimes called Sullivan) was personally served with process by a deputy sheriff in the same city.

Although the attack of each of these defendants was in the form of a motion to dismiss the complaint on the ground of insufficiency of service of process (Rule 12(b)(5), Rules of Civil Procedure, 16 A.R.S.) we treat them as motions to dismiss the complaint for lack of jurisdiction over the person. (Rule 12(b)(2), Rules of Civil Procedure). Taylor v. Portland Paramount Corporation, 9th Cir., 383 F.2d 634, decided September 12, 1967.

As to each of these motions the plaintiffs (hereinafter sometimes called Pegler) asserting jurisdiction have the burden of establishing it since their allegations have been challenged. The facts, and not the allegations of the complaint, must be the touchstone. Taylor v. Portland Paramount Corporation, supra. However, for the purposes of this appeal the defendants in oral argument in this court disclaimed any contention that the plaintiffs had any burden to establish the allegations in their complaint that a telecast occurred which under Arizona law would be an invasion of the right of privacy. A suggestion was made that this telecast might be privileged, but no attempt has been made to factually establish a privilege. Accordingly, we have accepted as true, for the purposes of this opinion, the allegations that Sullivan and Random House caused acts to occur which under our law constitute an invasion of the right of privacy as more fully hereinafter described.

The uncontested facts before the superior court may be summarized as follows: On January 26, 1964, in New York City the "Ed Sullivan Show," which was telecast nationwide, presented a certain stage play entitled "A Case of Libel," written by the defendant Henry Denker, published by the defendant Random House, Inc., and transmitted to Arizona by the defendant Columbia Broadcasting System, a New York corporation, and, to television screens in Tucson, Pima County, Arizona, by the defendant Old Pueblo Broadcasting Company, an Arizona corporation, the owner of station KOLD-TV in Tucson.

As a direct result of this telecast the plaintiffs, who are residents of Pima County, Arizona, and were residents thereof on January 26, 1964, commenced the instant action alleging an invasion of the right of privacy of Westbrook Pegler [1] against Sullivan, Random House, and other defendants.

The service of process with respect to Sullivan and Random House in each instance was pursuant to the provisions of Rule 4(a)(2), Rules of Civil Procedure, 16 A.R.S.[2]

---

1. Westbrook Pegler alleges that he has been a resident of Tucson, Arizona, for the past twenty years and this allegation is not controverted.

2. "4(e)(2) Summons; personal service out of state. When the defendant is a resident of this state, or is a corporation doing business in this state, or is a

In support of its motion Random House, by its treasurer, submitted an affidavit asserting that it is a New York corporation with its principal office in New York City, that the corporation is not doing business nor is it qualified to do business in Arizona, that it maintains no office and no bank account or assets in this state except sums due from its customers in Arizona who may have purchased books from Random House, that none of its corporate books or books of account are kept in Arizona, that no employee resides in Arizona, that two employees travel in Arizona semiannually interviewing college professors and other potential customers and that orders taken in Arizona are subject to acceptance or rejection by Random House at its home office in New York City. In like manner Sullivan, by affidavit, stated that he is a citizen and resident of New York, that he owns no real or personal property in Arizona (including, particularly, no bank accounts and choses in action), that the "Ed Sullivan Show" originates in New York City and has never originated in Arizona, and, specifically, that the show on January 26, 1964, originated in New York City.

There are three issues to be determined by this court:

1. Did the defendant Ed Sullivan cause "an event to occur" [3] in Arizona out of which the claim against him arose?

2. Did the defendant Random House, Inc., cause "an event to occur" in Arizona out of which the claim against it arose?

3. If one or both of the said defendants did cause "an event to occur" in Arizona, did the service of process in this action upon the said defendants, or either of them, deny to them, or either of them, due process of law?

Rule 4(e)(2), supra, is known as the "long arm" rule, comparable to the long arm statutes and rules of sister states. It provides for two methods of service of process outside of Arizona with the same effect as personal service within the state. Each of the appellees was served as authorized by the rule which has been held to be within the rule-making power of our Su-

person, partnership, corporation or unincorporated association subject to suit in a common name *which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose*, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state. In case of a corporation or partnership or unincorporated association, service under this Rule shall be made on one of the persons specified in Section 4(d) (6).

"(a) Registered mail. When the whereabouts of a defendant outside the state is known, the serving party may deposit a copy of the summons and complaint in the post office, registering it with a return receipt requested. Upon return through the post office of the registry receipt, he shall file an affidavit with the court showing the circumstances warranting the utilization of the procedure authorized under Section 4(e) (1); and (a) that a copy of the summons and complaint was dispatched to the party being served; (b) that it was in fact received by the party as evidenced by the attached registry receipt; (c) that the genuine receipt thereof is attached; and (d) the date of the return thereof to the sender. This affidavit shall be prima facie evidence of personal service of the summons and complaint and service shall be deemed complete and time shall begin to run for the purposes of Section 4(e) (4) of this Rule thirty (30) days after the filing of the affidavit and receipt.

"(b) Direct service. Service out of the state may also be made in the same manner provided in Section 4(d) of this Rule by a person authorized to serve process under the law of the state where such service is made. Service shall be complete when made and time for purposes of Rule 4(e) (4) shall begin to run at that time, provided that before any default may be had on such service, there shall be filed an affidavit of service showing the circumstances warranting the utilization of the procedure under Section 4(e) (1) and attaching an affidavit of the process server showing the fact of the service." (Emphasis supplied)

3. See the emphasized portion of Footnote 2, supra.

Glen Alden Corp., 93 Ariz. 361, 380 P.2d preme Court. Heat Pump Equipment Co. v. 1016 (1963). Furthermore the efficacy of each mode of service has been held to be identical to service within this state provided the defendants have had "minimum contacts" with Arizona. Phillips v. Anchor Hocking Glass Corporation, 100 Ariz. 251, 413 P.2d 732 (1966); Bekins v. Huish, 1 Ariz.App. 258, 401 P.2d 743 (1965); Executive Properties, Inc. v. Sherman, 223 F. Supp. 1011 (D.C.Ariz.1963).

To determine whether Sullivan caused an event to occur in this state an analysis of the tort action for invasion of the right of privacy is required, for, unless we first determine where the injuries allegedly suffered by Pegler occurred, we cannot determine whether an event occurred in Arizona which would justify the service of process upon Sullivan and Random House in New York. [4]

■ In Arizona an action for the invasion of the right of privacy is recognized. Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133 (1945). Our Supreme Court in *Reed*, supra, has held this action to be for an injury to the person rather than one involving property or contract rights. The claim of the plaintiffs is for damages arising from mental pain and annoyance to Westbrook Pegler resulting from the unauthorized publication of the play entitled "A Case of Libel." The gravamen of the action is " * * * the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication." 63 Ariz. at 305, 162 P.2d at 139. Furthermore, describing the nature of the action, our Supreme Court held:

" * * * recovery may be had for an invasion of the right of privacy for injured feelings alone, the wrongs re-

dressed must be considered as a direct rather than an indirect injury and one that is wholly personal in character, not depending on any effect which the publication may have on the standing of the individual in the community. It seems to us that the mind of an individual, his feelings and mental processes, are as much a part of his person as his observable physical members. An injury, therefore, which affects his sensibilities is equally an injury to the person as an injury to the body would be. In that respect a cause of action for the violation of the right of privacy, causing mental suffering to the plaintiff, is an injury to the person. * * *" 63 Ariz. at 306, 162 P.2d at 139.

■ Thus, the only place that the "event" could occur is where Mr. Pegler resided on January 26, 1964, and, for the purposes of the instant motions, he was at Tucson, Arizona. We hold, therefore, that Mr. Sullivan did cause an event to occur in Arizona out of which this cause of action arose.

■ As to Random House, the same injury is alleged, but in two forms: due to the telecast to which we have referred and by the sale in Arizona of the play. Again the answer must be the same. Mr. Pegler's residence was here and so were his sensibilities. Therefore, we hold, for the same limited purpose, that the defendant Random House, Inc., also caused a similar event to occur in Arizona.

■■ We find that Sullivan, as the producer and master of ceremonies of "The Ed Sullivan Show," entered Arizona by producing the play entitled "A Case of Libel" in New York City. It cannot be assumed that Sullivan did not know that the play

4. See § 377, Restatement of the Law of Conflict of Laws (1934) which provides that "[t]he place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes

place," and compare § 379(h) of Tentative Draft No. 9 (of April 24, 1964) of Restatement of the Law of Conflict of Laws, Second, which specifically deals with multistate invasion of privacy.

would be telecast in Arizona.[5] As the "Ed Sullivan Show" is essentially Sullivan's product the telecast of the show on January 26, 1964, in Arizona, which included the play published by Random House, made the actions of Sullivan and Random House voluntary, purposeful, reasonably foreseeable and calculated to have effect in Arizona, United Medical Laboratories v. Columbia Broadcasting System, 256 F.Supp. 570 (D.C.Or. 1966), and these findings constitute sufficient "minimum contacts" with Arizona. We hold, therefore, that these minimum contacts meet the requirements of due process in that the traditional notions of fair play and substantial justice are not offended. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). By the service of process in New York the superior court of Pima County obtained *in personam* jurisdiction over the defendants Ed Sullivan and Random House, Inc. In addition, as to the sale of the play in Arizona, the *ratio decidendi* of Blount v. T. D. Publishing Corporation, 77 N.M. 384, 423 P.2d 421 (1967), sustains the jurisdiction of the superior court over the person of the defendant Random House, Inc.

The amended order and judgment of the superior court is reversed.

HATHAWAY, C. J., and MOLLOY, J., concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.

5. The record establishes that the "Ed Sullivan Show" has a regular showing in Pima County unless occasionally the

time is pre-empted by Station KOLD–TV for a local telecast.