504 P.2d 961

**Aaron MAGIDOW and Eloise Magidow, Petitioners,**

**v.**

**CORONADO CATTLE COMPANY, Real Party in Interest, and the Honorable Fred J. Hyder, Judge of the Maricopa County Superior Court, Respondents.**

No. 1 CA–CIV 2187.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 26, 1972.

Lewis & Roca, by Paul G. Ulrich and David L. Cocanower, Phoenix, for petitioners.

Robertson, Molloy, Fickett & Jones, P. C., by Charles D. Wahl, Tucson, for respondents.

HAIRE, Chief Judge, Division 1.

This is a special action seeking reversal of an order of the Superior Court refusing to dismiss a complaint in a pending civil action as to petitioners here, Aaron Magidow and Eloise Magidow. This Court is asked to direct the Superior Court to dismiss the complaint as to them and to quash the service of summons on them, on the grounds of lack of jurisdiction over their persons and insufficiency of service of process.

The pending superior court action involves a complaint filed by Coronado Cattle Company, an Arizona corporation, respondent real party in interest herein, seeking to recover the purchase price of certain cattle sold by it to Hi-Pro Meat Packing Company, a California corporation, which is one of the defendants in that action. Hi-Pro is not licensed to do business in Arizona. Coronado made three shipments of cattle from a feedlot of its agent, Arlington Cattle Company, in Arizona to Hi-Pro in California, pursuant to an order placed by an agent of Hi-Pro. Hi-Pro then issued two checks in payment therefor which were subsequently dishonored, and refused to pay a draft for the third shipment, so that Coronado has never received any payment for the cattle. The two checks were drawn in California on Hi-Pro's corporate account in a California bank, were signed by Aaron Magidow in his capacity as its president, and were sent to Arlington in Arizona. The complaint names as defendants the partners in Arlington Cattle Company, Montebello Meat Packing Company (a corporation formerly owned by Aaron Magidow but sold prior to the transactions here involved), Hi-Pro Meat Packing Company, and twenty fictitious individual and two fictitious corporate defendants. The fictitious individual defendants are identified in the complaint as John Does 1 through 10 and Jane Does 1 through 10, and Count I of the complaint alleges that John Doe 1 and Jane Doe 1 are residents of Arizona or have caused an event to occur in Pima County, Arizona. Nowhere in the complaint is there any other allegation whatsoever of any specific act by John Doe 1 or Jane Doe 1, or any allegation of the event which they purportedly caused to occur in Arizona. It appears from the documents submitted to the trial court in connection with the motion to dismiss that although Aaron Magidow was president and "general manager" of Hi-Pro, neither of the Magidows was a director or a shareholder of Hi-Pro, and neither was an officer thereof except as just stated.

Petitioners here are not named as defendants in the complaint under their own names. They were each personally served in California with a summons (and a copy of the complaint) in this action which was addressed to and specifically identified the persons being served as "John Doe 1 and Jane Doe 1, now known to be: Aaron Magidow and Eloise Magidow". The Magidows appeared specially in the trial court and moved to dismiss the complaint as to them on the basis of lack of jurisdiction over their persons and for insufficient service, and to quash the service of the summons. In support of their motion, petitioners filed an affidavit of Aaron Magidow reciting that both of the Magidows were residents of California and not of Arizona at all relevant times, which recital is uncontroverted. They argued that being non-residents, and not having been alleged to have done any specific act in or to have had any minimum contacts with Arizona, the service of process on them outside of Arizona did not invest any jurisdiction over their persons in the Superior Court of Maricopa County, Arizona. The trial court denied the motions, and thereafter petitioners brought this special action to

review that order. Petitioners claim that the court had no jurisdiction over them and that by being made to proceed in and defend the superior court action they would be put to substantial and unnecessary expense and that their constitutional rights would be violated.

■ Our first determination must be whether a special action is appropriate to review the question of jurisdiction in this matter. We hold that it is, as in our opinion petitioners' ultimate right to appeal in this matter would not be an equally plain, speedy and adequate remedy as compared to a review at this stage by special action. Johnson v. Superior Court of Maricopa County, 14 Ariz.App. 329, 483 P.2d 561 (1971). If the trial court does not actually have jurisdiction, it would surely be unjust and unreasonable to put petitioners to the expense and delay of a full fledged lawsuit before determining that question on appeal. We therefore accept jurisdiction in this matter.

■■ The question then is whether under the facts of this case an Arizona court could acquire any jurisdiction over the petitioners by service of process on them in California. The facts as recited above have been taken only in small part from the very sketchy complaint and for the most part from the evidentiary materials submitted in opposition to petitioners' motion to dismiss in the trial court. Petitioners assert initially that these materials, and in fact the actual facts of the case, cannot be considered in determining jurisdiction at this stage, but that only the allegations of the complaint as served should be determinative of this question. They argue that since they were specifically identified as John Doe 1 and Jane Doe 1 in the summons, and since there are no allegations in the complaint as served concerning any acts or any minimum contacts by John Doe 1 and Jane Doe 1 with Arizona, the complaint shows on its face that there is no jurisdiction, and the trial court can go no further. While it is true that, in order for the trial court to acquire jurisdiction over a defendant designated under a fictitious name, the person being served must be given notice that he is being served in place of a particular fictitious defendant named in the complaint, Safeway Stores, Inc. v. Ramirez, 99 Ariz. 372, 409 P.2d 292 (1965), it is not the mere allegations of the complaint but the actual facts of the case which must be considered in determining jurisdiction. To determine these facts, the court may consider affidavits and other evidentiary material submitted. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Pegler v. Sullivan, 6 Ariz.App. 338, 432 P. 2d 593 (1967). If the law were as petitioners contend, they would be precluded from filing the affidavit which they did file to establish their non-residence in Arizona, which is the foundation for their assertion of lack of jurisdiction.

However, a review of the facts of this case as presented by the record thus far does indicate that the trial court had no jurisdiction over the Magidows. Keeping in mind that the trial court is purporting to exercise *in personam* jurisdiction over these two persons as individuals, there is simply neither any allegation nor any factual showing that either of them, as individuals, committed any act or omission anywhere which would give rise to liability to respondent, nor any showing that either of them had any contact with Arizona out of which respondent's claim arose.

■ It is fundamental that in order for a state to exercise personal jurisdiction over an individual in general, and to enter a judgment which will be personally binding on him, he must be personally served with process within that state. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878); O'Leary v. Superior Court of Gila County, 104 Ariz. 308, 452 P.2d 101 (1969); Rodriguez v. Rodriguez, 8 Ariz.App. 5, 442 P.2d 169 (1968); *see* First National Bank & Trust Company v. Pomona Machinery Company, 107 Ariz. 286, 486 P.2d 184

**42**

(1971). Although this basic rule has been liberalized considerably in recent years, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), states:

". . . it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. at 251, 78 S.Ct. at 1238.

The due process clause of the United States Constitution still:

". . . does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." International Shoe Co. v. Washington, 326 U.S. at 319, 66 S.Ct. at 160.

On the contrary, that provision still requires that:

". . . in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158.

The only exception to this general rule which might be applicable to this case is found in Rule 4(e)(2), Rules of Civil Procedure, 16 A.R.S., which provides in part:

"When the defendant . . . is a person . . . which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose . . . ."

he may be served personally without the state with the same effect as if served within it. The general language used in this Rule is intended to give Arizona courts the maximum jurisdiction permitted under the Federal Constitution, so that the "minimum contacts" doctrine of International Shoe now sets the outer limits of that jurisdiction. Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966); Pegler v. Sullivan, *supra*; Rodriguez v. Rodriguez, *supra.*

Reviewing the facts of the present action, it is apparent that neither of the Magidows had any contacts, minimum or otherwise, with Arizona in connection with the subject of the complaint. The contract on which respondent is suing was between itself and Hi-Pro, a corporation. The order for shipment of the cattle which gave rise to this contract was placed by that corporation through one of its agents (other than Magidow). The checks involved were issued by Hi-Pro on its corporate account, signed by Aaron Magidow in his capacity as president. Neither of the Magidows was a stockholder or director of Hi-Pro, and Mrs. Magidow was not an officer thereof. While Aaron Magidow was the president and general manager of the corporation, there is no showing that he acted in any capacity other than as the chief executive officer thereof, or that he had any financial interest in the corporation other than the indirect type of interest which any employee has in the business of his corporate employer. Respondent claims that Aaron Magidow was the alter ego of Hi-Pro and that he was in effect operating his own business, so that the corporate form should be disregarded and the acts of

the corporation regarded as Magidow's acts. However, the facts presented do not support this theory. There was no showing of such unity of interest and ownership between Magidow and Hi-Pro that it can be said that the separate "personalities" of each ceased to exist, and under such circumstances even the owners of a corporation cannot be held personally liable, let alone a non-owner thereof. Dietel v. Day, 16 Ariz.App. 206, 492 P.2d 455 (1972). Respondent also urges that Aaron Magidow should be held personally liable because of respondent's bald assertion that as president of Hi-Pro Magidow knew that the checks he signed would not be covered by funds in the corporate account. The only evidence on this point, however, comes from the deposition of Aaron Magidow filed by respondent, which indicates that Magidow believed that the checks would be paid because of a deposit he expected to be made under an existing financing arrangement.

■■ It thus appears that Eloise Magidow had no contacts with respondent or Arizona whatsoever other than those arising from her membership in the marital community with Aaron Magidow; that Aaron Magidow had no such contacts except in his capacity as president of Hi-Pro; and that there is thus no basis for imposing personal liability or personal jurisdiction on either of them by virtue of personal service of the summons outside of the State of Arizona. Respondent has failed to meet its burden of establishing jurisdiction, which is imposed on it when jurisdiction is challenged. Pegler v. Sullivan, *supra*.

For the foregoing reasons the superior court had no jurisdiction over the petitioners; its order refusing to dismiss the complaint was improper and is hereby reversed; and the superior court is directed

to enter an order dismissing the complaint as to petitioners for lack of jurisdiction over their persons.[1]

EUBANK and JACOBSON, JJ., concur.

---

1. It is not necessary to decide the question of sufficiency of service of process because, assuming that it was sufficient (i. e., in compliance with the applicable rules as to the method of service), it still did not confer personal jurisdiction over petitioners under the facts of this case.