514 P.2d 270

**POWDER HORN NURSERY, INC., an Arizona corporation, Appellant,**

**v.**

**SOIL AND PLANT LABORATORY, INC., a corporation, O. A. Matkin and Jane Doe Matkin, husband and wife, and John E. Rodebaugh and Jane Doe Rodebaugh, his wife, Appellees.**

**No. I CA–CIV 1790.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 18, 1973.

Rehearing Denied Oct. 22, 1973.

Review Denied Nov. 13, 1973.

---

**518**

Carson, Messinger, Elliott, Laughlin & Ragan by Robert W. Holland, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Jeffrey B. Smith, Phoenix, for appellees.

## OPINION

HAIRE, Judge.

This appeal presents the question of whether the courts of Arizona may, consistent with the due process clause of the Fourteenth Amendment, exercise *in personam* jurisdiction over a California corporation and two individual California defendants, when service of process has been made in California pursuant to Rule 4(e)(2), Rules of Civil Procedure, 16 A.R. S.

The defendants have been sued in tort by an Arizona plant nursery for damage to its plants which allegedly occurred because of negligently prepared soil analyses and soil treatment recommendations for which the defendants are responsible.

The trial court dismissed the complaint upon defendants' motion for lack of personal jurisdiction over the defendants. The matter was decided upon the basis of the complaint and certain affidavits and exhibits which are in the record on appeal, and there is no actual controversy as to the facts pertinent to the jurisdiction question.

## I. FACTUAL BACKGROUND

Plaintiff is a corporation engaged in the business of growing and maintaining nursery stock for sale in Scottsdale, Arizona. In 1968 a representative of the plaintiff traveled to the offices of the defendant corporation, a soil testing laboratory, in Orange, California. At this meeting plaintiff's representative requested the services of defendant corporation in performing soil analyses and giving expert horticultural advice for plaintiff's nursery, and he re-

ceived during his visit a promotional pamphlet outlining the services available from the defendant corporation. The plaintiff presented soil samples to the defendant corporation and, later, received by mail in Scottsdale, Arizona, an analysis and recommendation.

On at least five subsequent occasions soil samples were mailed from plaintiff in Arizona to the defendant corporation in California. The samples were analyzed in California and the results together with recommendations were returned by mail to the plaintiff in Scottsdale, Arizona. This relationship continued through 1969 and a portion of 1970, until the alleged damage occurred.

The defendant California corporation has offices and laboratories in the state of Washington, as well as in California. The defendant corporation does not advertise in any media, but appears to be well known in its field, and its pamphlet indicates that it does business with customers in states other than California and Washington, and also with customers in foreign countries. It has had "sporadic" requests for its services from Arizona customers other than the plaintiff. However, no representative or agent of the defendant corporation has ever been in Arizona concerning the corporation's business and the corporation owns no property in Arizona.

The individual defendants, Rodebaugh and Matkin, are listed as staff members of the Orange, California, office of the defendant corporation. Rodebaugh conducted the personal interview with plaintiff's representative which initiated the relationship here involved. Matkin was listed as a director of the Orange, California, office in the pamphlet and in correspondence received by plaintiff. Both men are officers and employees of the defendant corporation and both signed one or more of the soil analyses sent to plaintiff. Matkin has been a resident of California continuously for more than 46 years; Rodebaugh for more than 6 years. Neither owns property

in Arizona nor has either been in Arizona on a work assignment for the defendant corporation.

## II. JURISDICTION OVER THE CORPORATE DEFENDANT

Service upon the defendants was made in accordance with the provisions of Rule 4(e)(2), Rules of Civil Procedure, 16 A.R.S. This is Arizona's "long arm" service of process rule, and in pertinent part provides as follows:

> "When the defendant is a . . . corporation . . . which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state."

In their motion to dismiss for lack of jurisdiction, the defendants did not contend that the method of service utilized by the plaintiff pursuant to Rule 4(e)(2) failed to give them reasonable notice and opportunity to defend. *See* Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Rather, their attack goes solely to the *power* of the state of Arizona to exercise *in personam* judicial jurisdiction over them under the circumstances of this case. The *power* of a state to exercise its judicial jurisdiction over non-resident individuals and foreign corporations is subject to limits imposed by the due process clause of the Fourteenth Amendment to the United States Constitution. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). While at one time these limits were fairly definite and relatively easy to ascertain, subsequent decisions of the United States Supreme Court have expanded the judicial power of the states, and have set down standards for the ascertainment of the limits of that power which, while simple in formulation, are extremely difficult to analyze and apply to specific fact situations. *See* particu-

larly, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 223 (1957); and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ Even though expanded *in personam* jurisdiction was authorized by the cited Supreme Court decisions, Arizona had no statutes or rules authorizing the exercise of this expanded jurisdiction until 1961.[1] Prior to that time, Arizona's rules relating to the obtaining of jurisdiction through service of process were still tailored to the standards set in the earlier decisions of the United States Supreme Court. In 1961, a State Bar committee was given the task of recommending amendments to extend Arizona's "long arm" jurisdiction, and the adoption of Rule 4(e)(2), as it now reads, resulted. The new Rule 4(e)(2) provided a method of service for obtaining *in personam* jurisdiction over non-resident individuals and foreign corporations not only on the traditional basis of "doing business in the state", but also on the basis of having "caused an event to occur in this state out of which the claim . . . arose." This latter phrase is not completely unambiguous, especially when applied to a fact situation involving an act by the defendant in another state which causes an event or effect to occur in this state without the defendant ever having been present here. However, a close reading of the phrase discloses that it is not the occurrence of the initiating act of causation which is required in this state, but rather that the resulting event or effect be in this state. Strengthening this interpretation are the State Bar committee notes which indicate that by the use of the subject phrase the intent was "to give to Arizona residents the maximum privileges which the Constitution of the United States permits them to have." A more restrictive interpretation of the language of Rule 4(e)(2) would not allow Arizona residents to take advantage of the maximum privileges now available under the due process clause of the Fourteenth Amendment, as interpreted in the above-cited United States Supreme Court decisions.

In the fact situation under consideration there is no contention that the defendant corporation was "doing business" in this state within the meaning of that term as used in Rule 4(e)(2). Therefore our initial inquiry must be directed to determining whether the defendants' entirely out-of-state activities have caused an event to occur in Arizona out of which the plaintiff's claim arose. If we find that the defendant corporation has caused such an event to occur in Arizona, then the Arizona courts have jurisdiction unless we find that the maintenance of the suit in Arizona courts would offend the due process "traditional notions of fair play and substantial justice". International Shoe Co. v. Washington, *supra.*

■ We do not find it difficult to answer our first inquiry. Assuming the validity on the merits of plaintiff's claim, the damages suffered by the plaintiff in applying the directions and information given by the defendant corporation are a direct result of the defendant corporation's negligent performance of its contracts with the plaintiff. It cannot be questioned that an event, the damages to plaintiff's nursery stock, occurred in Arizona, and it is this event to which Rule 4(e)(2) speaks. *See* Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966); Pegler v. Sullivan, 6 Ariz.App. 338, 432 P.2d 593 (1967). The fact that the defendants' initial duty arose out of contract does not

---

1. When the question has arisen, the courts have usually held themselves without authority under their local law to exercise jurisdiction on bases not recognized at common law unless authorized to do so by appropriate rule or statute. *See* Restatement, Conflict of Laws, Second, § 37, Comment *b.*

preclude assumption of jurisdiction by the state of Arizona, since Rule 4(e)(2) is not in any way limited to tort actions. *See* Denn v. Southern Peru Copper Corp., 19 Ariz.App. 453, 508 P.2d 340 (1973); Molybdenum Corporation of America v. Superior Court, 17 Ariz.App. 354, 498 P.2d 166 (1972); *cf.* McGee v. International Life Insurance Co., *supra*. We therefore conclude that in rendering its contractual services to plaintiff, the defendant corporation has caused an event to occur in Arizona out of which the claim arose.

We now proceed to the more difficult second inquiry, that is, the determination of whether the defendant corporation had sufficient minimum contacts with Arizona so that the maintenance of this action will not offend traditional notions of fair play and substantial justice. McGee v. International Life Insurance Co., *supra;* International Shoe Co. v. Washington, *supra*. As we have previously stated herein, the rule is simple in formulation, but difficult in analysis and application.

As previously mentioned, United States Supreme Court decisions reveal an expanding concept of what is "fair" in determining state court jurisdiction. As stated in McGee, *supra:*

> "In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. Washington, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial jus-tice.' Id., at 316, 66 S.Ct. 154, at page 158.

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

> "Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." 355 U.S. at 222, 223, 78 S.Ct. at 201.

In its prior decision in International Shoe Co. v. Washington, *supra,* the court had stated:

> "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." 326 U.S. at 319, 66 S.Ct. at 160.

In its subsequent decision in Hanson v. Denckla, *supra,* the United States Supreme Court emphasized the importance of a finding that the defendant had purposefully directed its activities toward the forum state.

These nebulous guidelines advanced by the United States Supreme Court have resulted in prolific litigation in both the federal and state court systems, with many proposed tests, but with the practical result

being that each case seems to speak as "a law unto itself". Thus in Phillips v. Anchor Hocking Glass Corp., *supra,* a products liability case, after discussing the purposeful activity or "foreseeability" test of Hanson in a somewhat ambivalent (and ambiguous) fashion, the Arizona Supreme Court advanced the following test:

"There are several factors which a trial court should consider in determining whether it is fair to exercise jurisdiction over a nonresident manufacturer whose product has injured a resident plaintiff in this state. First, the court should consider the nature and size of the manufacturer's business. As the probability of the product entering interstate commerce and the size or volume of the business increase, the fairness of making the manufacturer defend in the plaintiff's forum increases. Second, the court should consider the economic independence of the plaintiff. A poor man is likely to become a public ward if his injuries are uncompensated. Moreover, he may not be able to afford a trip to another jurisdiction to institute suit. In addition, he may feel unable to cope with the prospect of traveling to a strange state. The immobility of our lower economic class is well known. Third, the court should consider the nature of the cause of action including the applicable law and the practical matters of trial. As the number of local witnesses increases and their availability to travel decreases, it seems fairer to make the manufacturer defend in the plaintiff's forum. These factors discussed above are guidelines to assist the trial court. They are not exclusive and the court should consider all other matters it deems relevant." 100 Ariz. at 260, 413 P.2d at 738.

In Pegler v. Sullivan, *supra,* a defamation action, there were no in-state activities of the defendants, and the in-state *effect* was the receipt of a television broadcast originating in New York City. Division 2 of this Court concluded as follows:

". . . the telecast . . . made the actions of [defendants] voluntary, purposeful, reasonably foreseeable and calculated to have effect in Arizona [citations omitted] and these findings constitute sufficient 'minimum contacts' with Arizona. We hold, therefore, that these minimum contacts meet the requirements of due process in that the traditional notions of fair play and substantial justice are not offended." 6 Ariz.App. at 342, 432 P.2d at 597.

An attempt to apply the three factors set forth by the Arizona Supreme Court in Phillips v. Anchor Hocking Glass Corp., *supra,* to the fact siuation here involved leads to inconclusive results. First, a consideration of the meager record concerning the nature and size of the defendant corporation's business reveals only that the defendant corporation has offices in two Western states, and does some business by mail in other states and possibly with some foreign countries. Second, concerning the plaintiff's economic independence, there is nothing to show that plaintiff would be financially unable to afford a trip to another jurisdiction (California) for the purpose of instituting suit. It will be recalled that in the first place plaintiff made such a trip to California to initiate the subject transactions with the defendant corporation. Third, concerning the nature of the action, the applicable law and practical matters of trial, no showing has been made as to any differences in applicable law. Of course the alleged damages are to the growing nursery stock in Arizona, and to this extent, the Arizona forum would be most practical from a proof of damages standpoint. However, from the record we are unable to say that a balancing of the conveniences of the witnesses and parties would be more favorable to maintaining the action here than in California.

In Phillips the Arizona Supreme Court gave little importance to "purposeful activity" or "foreseeability" as a standard to be used in determining the forum state's ju-

risdiction, perhaps for the reason that this element was practically lacking in the facts presented on the jurisdictional question in Phillips. However, Division 2 in its subsequent decision in Pegler v. Sullivan, *supra,* in finding the required minimum contacts with Arizona, relied completely upon the fact that the defendants' conduct was "voluntary, purposeful, reasonably foreseeable and calculated to have an effect in Arizona." Inasmuch as the Arizona Supreme Court denied review in Pegler, we must assume that in a proper setting the presence of foreseeability or purposeful activity directed towards obtaining or causing an effect in Arizona would be recognized by the Arizona Supreme Court as having prime importance in establishing the required minimum contacts. On this latter point, we find helpful a portion of Comment a, § 37 of the Restatement of Conflicts, Second. Section 37 states:

"A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

In explaining the function of intent in the application of § 37, Comment a provides in part as follows:

"There are three possible situations: (1) The act was done with the intention of causing effects in the state; (2) the act, although not done with the intention of causing effects in the state, could reasonably have been expected to do so; and (3) the act was not done with the intention of causing effects in the state and could not reasonably have been expected to do so. These three situations will be discussed in the order stated.

"The act may have been done with the intention of causing effects in the state. If so, the state may exercise the same judicial jurisdiction over the actor, or

over the one who caused the act to be done, as to causes of action arising from these effects as it could have exercised if these effects had resulted from an act done within its territory."

■ The "intent" discussed in Comment *a, supra,* is the element of "foreseeability" or "purposeful activity" discussed in the Phillips, Pegler and Hanson decisions, *supra.* In our opinion this foreseeability or purposeful activity is readily apparent in the facts of this case and requires a finding that the defendant corporation had sufficient minimum contacts with Arizona to justify the exercise of jurisdiction by the Arizona courts. Here, the defendant corporation engaged in sustained contractual activity, purposefully calculated and intended to have a direct effect in its application to the plaintiff's nursery operation in Scottsdale, Arizona. *Cf.* McGee v. International Life Insurance Co., *supra.* In McGee, the United States Supreme Court stated that it was sufficient for due process if the suit was based *on a contract which had substantial connection with the forum state.* While plaintiff has framed its action in tort, it cannot be disputed that the duty involved arises from the contractual relationship of the parties. In view of the purposeful activities of the defendant corporation, we find a substantial contractual connection with the forum state, Arizona.

In our opinion the defendant corporation has engaged in sufficient minimum contacts with the State of Arizona so that traditional notions of fair play and substantial justice will not be offended by the exercise of jurisdiction over it by the Arizona courts. As to the defendant corporation, the judgment dismissing plaintiff's complaint must therefore be reversed.

## III. JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

■■ There is no contention advanced that the participation of the individual defendants in rendering the services here in-

volved was other than strictly in their capacity as employees of the defendant corporation. Further, there is nothing to indicate that the defendant corporate entity was utilized as a sham or in any manner which would justify disregarding its existence. Under these circumstances, it is difficult to say that these individual defendants, as opposed to their corporate employer, have caused an event to occur in Arizona with sufficient minimum contacts by these defendants with Arizona to justify this state's "long arm" jurisdiction over them. The contractual objectives, which we deemed to be of considerable importance in establishing jurisdiction over the defendant corporate employer, are diluted significantly when considered in relation to the individual defendants. With this dilution, the Arizona contacts by the individual defendants become exceedingly weak, if not altogether nonexistent. The individual defendants have conducted no activities in this state, and from the record it appears that the services they rendered in California were solely in discharge of their corporate duties. While acts done by non-resident individuals in the scope of their employment or duties for a foreign corporation may be sufficient to establish *in personam* jurisdiction over their corporate employer, it does not necessarily follow that these same acts will be sufficient to support *in personam* jurisdiction over the non-resident individuals. Wilshire Oil Co. v. Riffe, 409 F.2d 1277 (10th Cir. 1969); Willner v. Thompson, 285 F.Supp. 394 (E.D.N.Y.1968); Unicon Management Corp. v. Koppers Co., Inc., 250 F.Supp. 850 (S.D.N.Y.1966); *cf.* Magidow v. Coronado Cattle Co., 19 Ariz.App. 38, 504 P.2d 961 (1972).

When the weakness of the Arizona contacts is considered in conjunction with the fact of the individual defendants' "once-removed" relationship to those contacts, it is our opinion that notions of fair play and substantial justice deprive the Arizona courts of jurisdiction over these individual defendants.

The trial court's judgment is sustained as to the individual defendants, and reversed insofar as concerns the corporate defendant.

JACOBSON, C. J., Div. 1, and EUBANK, P. J., concur.