WILLIAM J. STUPAR *et al.*, Petitioners-Appellants, *v.* THE BANK OF WESTMONT *et al.*, Respondents-Appellees.

Second District (1st Division)    No. 74-81

Opinion filed July 27, 1976.

Smith & Munson, of Wheaton, for appellants.

Herbert J. Bell, of Downers Grove, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiffs filed a petition for the registration (under the Uniform Enforcement of Foreign Judgments Act, Ill. Rev. Stat. 1971, ch. 77, pars. 88-105), of a judgment in their favor against the Bank of Westmont, entered in Arizona, under its "long-arm" statute. The trial court refused registration on the ground that the Arizona court was without jurisdiction over the Bank. The plaintiffs appeal, contending that the Arizona court did have jurisdiction. We agree and reverse and remand the case for such registration.

In October, 1971, Edna Trybulski, a widow, and her son William Stupar bought a Ford Pinto from a dealer in Naperville under the usual retail installment sales contract signed by them, which contract was assigned to the Bank of Westmont. They fell behind in their payments and the son, early in 1972, left the State without notice to the bank, taking the car with him, contrary to the contract. In December of 1972, the bank finally located him in Phoenix, Arizona, and employed someone in Arizona who, without prior notice to the son, repossessed the car and returned it to Illinois. The bank then gave the son notice of the repossession and of its intention to sell the car unless he paid off the then

balance of $2,153.19. His lawyer in Arizona wrote the bank, demanding the return of the car and tendering a check sufficient to bring the payments up to date.

Not receiving an answer, the son and his mother, in January 1973, went into the Superior Court of Maricopa County, Arizona, which issued a temporary injunction which was, together with copies of their complaint, a summons, and a "Rule to Show Cause," served on the bank by a deputy sheriff of Du Page County on January 5, 1973. On January 13, 1973, the Arizona court entered an order enjoining the bank from selling the automobile. This order was duly served on the defendant by a deputy sheriff of Du Page County, as had been the summons and complaint. The bank never filed an appearance in the Arizona proceedings or responded in any way. It also apparently ignored and disobeyed the injunction order since by its own admission it has sold the automobile. On February 16, 1973, the Superior Court of Maricopa County, Arizona, entered a default judgment for the plaintiffs against the defendant for $7,969.31 actual damages, $15,000 punitive damages, and costs, finding that the defendant's conduct was wrongful, wanton, willful, intentional and malicious. That court specifically found that "the Bank of Westmont has caused events to occur in Maricopa County, State of Arizona, out of which the cause of action of the plaintiffs arose in that the said Bank of Westmont did retain and direct repossession of a 1972 Pinto automobile * * * which is the subject matter of this action, in Maricopa County, Arizona, and that this court has jurisdiction pursuant to the provisions of Rule 4(e)(2) Arizona Rules of Civil Procedure." The defendant did not appeal.

On March 2, 1973, the petitioners filed, in the Circuit Court of Du Page County, a petition for the registration of a foreign judgment under the Illinois Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1973, ch. 77, pars. 88-105), attaching a certified copy of that said Arizona judgment, and setting out the service of the complaint, summons, on the defendant and other jurisdictional facts above outlined.

The defendant bank was served and answered, admitting the facts but denying the legal conclusion that the judgment "remains in full force and effect." Finally, on December 10, 1973, the trial court denied the motion for entry of a final judgment and for registration of said foreign judgment "for the reason that the Superior Court of Arizona for Maricopa County was utterly and completely without jurisdiction over the defendant BANK OF WESTMONT in its case No. C-271791." It also ordered that the petitioners go hence without day and found no just reason to delay appeal or enforcement. It is from this order that the petitioners appeal.

The leading case in the field of "long arm" statutes is, of course, *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95,

66 S. Ct. 154. There the question presented was "whether, within the limitations of the due process clause of the Fourteenth Amendment, appellant, a Delaware corporation has by its activities in the State of Washington rendered itself amenable to proceedings in the courts of that state to recover unpaid contributions to the state unemployment compensation fund exacted by state statutes, * * *." (326 U.S. 310, 311, 90 L. Ed. 95, 99, 66 S. Ct. 154.) The appellant had its principal place of business in St. Louis, Mo., and manufactured and sold shoes and other footwear. It had no office in Washington and maintained no stock of goods there. It did, however, employ 11 to 13 salesmen who resided in Washington, under supervision from St. Louis. They merely solicited and transmitted orders to St. Louis for acceptance or rejection and shipment F.O.B. St. Louis. No salesman could enter into a contract or make collections.

In sustaining the jurisdiction of the court of the State of Washington to hear and determine the State's claim for unemployment compensation against the employer corporation, the United States Supreme Court, speaking through Mr. Chief Justice Stone, said:

> "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their *de facto* power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U.S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463. See Holmes, J., in *McDonald v. Mabee*, 243 U.S. 90, 91. Compare *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 319. See *Blackmer v. United States*, 284 U.S. 421; *Hess v. Pawloski*, 274 U.S. 352; *Young v. Masci*, 289 U.S. 253." 326 U.S. 316-17, 90 L. Ed. 101-02, 66 S. Ct. 154.

Perhaps the next well known case in this field is *McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199. There Franklin, a resident of California, purchased a life insurance policy from an Arizona company. Later the defendant company assumed the contracts of the original insurer and mailed a reinsurance certificate to Franklin in California and he accepted and paid premiums until his death. His mother, Mrs. McGee, was the beneficiary and filed proofs but it

refused to pay, claiming suicide. The company had no office or agent in California and, aside from this one policy, had never solicited business there.

The mother then sued in California and summons was served by registered mail in Texas. She recovered a judgment in California and, when it was not paid, sued in Texas to enforce it. The trial court refused to do so on the same ground as the trial court cited in the case at bar. In reversing and remanding, the Supreme Court said:

"Since *Pennoyer v. Neff*, 95 U.S. 714, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. * * * More recently in *International Shoe Co. v. Washington*, 326 U.S. 310, the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Id., at 316.

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

"Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. *Hess v. Pawloski*, 274 U.S. 352; *Henry L. Doherty & Co. v. Goodman*, 294 U.S. 623; *Pennoyer v. Neff*, 95 U.S. 714, 735 * * *." 355 U.S. 220, 222-23, 2 L. Ed. 2d 223, 225-26, 78 S. Ct. 199.

The Bank cites *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, as limiting the *International Shoe* doctrine but that

case is not at all similar to the case at bar as is demonstrated at page 251, where the Court said:

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from *McGee v. International Life Ins. Co.*, 355 U.S. 220, and the cases there cited." 357 U.S. 235, 251, 2 L. Ed. 2d 1283, 1296, 78 S. Ct. 1228.

*International Shoe* and its progeny have often been cited and followed in Illinois. See *Nelson v. Miller* (1957), 11 Ill. 2d 378, 384, 143 N.E.2d 673; *Grobark v. Addo Machine Company, Inc.* (1959), 16 Ill. 2d 426, 429-36, 158 N.E.2d 73; *Gray v. American Radiator & Sanitary Corp.* (1961), 22 Ill. 2d 432, 437-441, 176 N.E.2d 761; *Department of Revenue v. Nat. Bellas Hess, Inc.* (1966), 34 Ill. 2d 164, 174-76, 214 N.E.2d 755; *Koplin v. Thomas, Haab & Bott* (1966), 73 Ill. App. 2d 242, 253, 219 N.E.2d 646; *Ward v. Formex, Inc.* (1975), 27 Ill. App. 3d 22, 23-25, 325 N.E.2d 812.

Rule 4(e)(2) of the Rules of Civil Procedure of Arizona (16 Ariz. Rev. Stat. Ann. R. 4(e)(2) (1973)), in pertinent part, provides as follows:

"4(e)(2) *Summons; personal service out of State.* When the defendant is a resident of this state, or * * * is a * * * corporation * * * which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state."

■■ We conclude and hold that said rule is well within the *International Shoe* doctrine and is valid. Factually it is obvious that the defendant "caused an event to occur" in Arizona, "out of which the claim which is the subject of the complaint arose," inasmuch as the bank repeatedly concedes in its brief here that "it engaged an independent contractor in Arizona to repossess the car and return it to Illinois where it was sold * * *."

■■ The bank's contention that the use of an "independent contractor" somehow avoids the legal effect of its said actions is well disposed of in *Denn v. Southern Peru Copper Corp.* (1973), 19 Ariz. App. 453, 455, 508 P.2d 340, 342, where the court said:

"Appellee argues that it was acting through an independent contractor and therefore could not be 'present'. Although Mr. Splane may technically have been an independent contractor, we believe that the distinction between agent and independent contractor is immaterial to the subject problem. *Thew Shovel Co. v. Superior Co.*, 35 Cal. App. 2d 183, 95 P.2d 149 (1939); *Moore Mach. Co. v. Stewart-Warner Corp.*, 27 F. Supp. 526 (N.D. Calif. 1939). * * *."

The bank cites three Arizona cases (*Moqui, Inc. v. Ambrose &*

*Rosenfield & Co.* (1974), 21 Ariz. App. 565, 521 P.2d 1143; *Deere & Co. v. Superior Court* (1972), 18 Ariz. App. 491, 503 P.2d 967; and *Molybdenum Corp. of America v. Superior Court* (1972), 17 Ariz. App. 354, 498 P.2d 166), for its contention that the facts here do not qualify under the Arizona "long-arm" statute. We have examined each of those cases and conclude that they are not at all similar to the facts here but we shall not make this opinion even longer by a detailed discussion of them.

More on point is *Pegler v. Sullivan* (1967), 6 Ariz. App. 338, 432 P.2d 593, in which Westbrook Pegler sued Random House, Inc., and Ed Sullivan for an invasion of privacy caused by the televised play "A Case of Libel" televised nationwide by CBS on January 26, 1974. The court remarked in sustaining jurisdiction that the only place where the event could have occurred was where Mr. Pegler resided on that date and that therefore Mr. Sullivan and Random House did "cause an event to occur" in Arizona out of which the cause of action arose. Similarly, in the instant case, the only place where the event of converting the automobile could have occurred is the place where it was located on the day it was converted. Furthermore, the defendant's actions here, as were the defendants' actions in *Pegler*, were "voluntary, purposeful, reasonably foreseeable and calculated to have effect in Arizona * * *. These minimum contacts meet the requirements of due process in that the traditional notions of fair play and substantial justice were not offended." 6 Ariz. App. 338, 342, 432 P.2d 593, 597.

Finally in *Liston v. Butler* (1967), 4 Ariz. App. 460, 421 P.2d 542, the court held that Liston caused an event to occur in Arizona when he filed a $1,500 lien with the Motor Vehicle Division of the Arizona Highway Department and also when he sought to foreclose the lien. Surely Arizona would not treat the self-help seizure of an automobile without benefit of law any more kindly.

■■ We therefore conclude and hold that, under the *International Shoe* doctrine and the Arizona "long arm" statute, the Arizona court had jurisdiction over the person of the defendant bank and the subject action.

■■ This really disposes of the case but the bank's counsel also asserts (III) that "Illinois' public policy would be violated if this judgment were registered in Illinois," citing an Arizona case (*Roofing Wholesale Co. v. Palmer* (1972), 108 Ariz. 508, 502 P.2d 1327) and a Ninth Circuit Case (*Adam v. Southern California First National Bank* (9th Cir. 1974), 492 F.2d 324) for the proposition that the bank's repossession of the Ford Pinto in Arizona "was permissible under the laws of Arizona." But if a court has (as we hold Arizona had) jurisdiction to hear and decide a case, it has jurisdiction to decide it contrary to our views. In other words, it has the power to be wrong as well as right. And, under the Full Faith and

Credit Clause of the Constitution, the second State must accept it. The bank cites no cases supporting its said contention and we know of none. If the bank had any defenses or counterclaims arising out of the conditional sales contract, these should have been raised in the Arizona court and that judgment is *res judicata* as to everything which could have been raised. (*Morris v. Jones* (1946), 329 U.S. 545, 552-53, 91 L. Ed. 488, 67 S. Ct. 451.) We find no merit in the contention.

■■ The bank's last contention (IV) is that "the findings of the trial judge that Arizona courts lacked jurisdiction over this Illinois defendant should not be disturbed on review absent a showing of abuse of discretion," citing two cases, neither of which in any way supports the bank's contention. Suffice it to say that a determination whether to enforce a judgment rendered by a sister State is not a matter of discretion; where the judgment is valid, the United States Constitution demands its enforcement.

We therefore reverse the order and judgment and remand the case to the trial court with directions to register and enforce the Arizona judgment.

Reversed and remanded.

GUILD, P. J., and SEIDENFELD, J., concur.