Kent NORTHCROSS, dba Northcross
Distributing, Plaintiff,

v.

JOSLYN FRUIT CO., INC., a
corporation, Defendant.

No. CIV–77–97–TUC–WCF.

United States District Court,
D. Arizona.

July 27, 1977.

Maurice M. Stern, Tucson, Ariz., for plaintiff.

Richard M. Yetwin, Tucson, Ariz., for defendant.

## ORDER

FREY, District Judge.

Now before the Court in this case is defendant's Motion to Dismiss, or in the alternative, Petition for Change of Venue. Two arguments are set forth by defendant.

■ 1. *Defendant's motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state sufficient jurisdictional matter.* As the plaintiff's response to the motion to dismiss correctly points out, this motion is without merit. The Court has proper subject matter jurisdiction under Title 28, United States Code, Section 1332 and there are sufficient factual allegations to support it.

2. *Defendant's motion to dismiss, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, because of lack of personal jurisdiction under Rule 4(e)(2), the Arizona "long-arm" statute.* While this question of personal jurisdiction is a close one, it appears that plaintiff has failed to carry his burden of establishing a sufficient basis for jurisdiction. The Court concludes that there is no personal jurisdiction over the defendant.

## FACTS

There is a dearth of factual matter involved, but it does appear that plaintiff is a citizen of Arizona, doing business as Northcross Distributing Company. Defendant is a corporation doing business under the laws of Colorado, with its principal place of business in Colorado. In January of 1977, the defendant contacted an agent of the plaintiff in Colorado and ordered from the plaintiff a certain quantity of perishable agricultural products. The goods were shipped from Nogales, Arizona, to defendant located in Colorado Springs, Colorado. Four additional orders and shipments followed this same procedure; all were designated F.O.B. Colorado Springs. Apparently, the shipments stopped in March of 1977. In May of 1977, the plaintiff filed this suit alleging that defendant had breached its contract and that defendant owed plaintiff a total of $23,472.50 for goods, wares and merchandise sold and delivered to the defendant.

Defendant is not authorized, registered or otherwise certified to do business within the State of Arizona. It maintains no offices, businesses, telephone listings, subsidiaries, etc., in Arizona. The defendant has no employees who reside in Arizona, nor does it have any interest in property, either real or personal, located within the State.

## ANALYSIS

■ To resolve an issue of personal jurisdiction, two inquires must be addressed, i.e., whether an applicable rule or statute potentially confers personal jurisdiction over the defendant and whether assertion of such jurisdiction accords with constitutional principles of due process. *Amba Marketing Inc. v. Jobar Intern Inc.*, 551 F.2d 784, 788 (9th Cir. 1977).

■ As to the first part of such analysis, Rule 4(e)(2) is intended to permit Arizona courts to exercise the maximum jurisdiction permitted under the United States Constitution. *See Savarese v. Edrick Transfer & Storage Inc.*, 513 F.2d 140, 146 n. 17 (9th Cir. 1975). However, the question of the

outer limits of jurisdiction under those standards is not reached unless the facts of the particular case first bring it within the provisions of Rule 4(e)(2). *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 413 P.2d 732 (1974); *Lycoming Div. of Avco Corp. v. Superior Court*, 22 Ariz.App. 150, 524 P.2d 1323 (1974). Rule 4(e)(2) provides in pertinent part:

> "when the defendant . . . is a corporation doing business in this state, or . . . which has caused an event to occur in this state out of which is the subject of the complaint arose"

it may be served with process by registered or certified mail with the same effect as personal service within the state—conferring on the Court in personam jurisdiction over the corporation served. Initially, therefore, it must be determined whether the defendant was doing business or caused an event to occur within Arizona, thus bringing it within the scope of 4(e)(2).

■ It is clear from a submitted affidavit that the defendant cannot be considered as "doing business in Arizona". *See Lycoming Div. of Avco Corp. v. Superior Court*, 22 Ariz.App. 150, 524 P.2d 1323 (1974); *Denn v. Southern Peru Copper Corp.*, 19 Ariz.App. 453, 508 P.2d 340 (1973). The question is whether the acts of the defendant caused an "event" to occur in Arizona.

In its most recent interpretation of Arizona's Rule 4(e)(2), the Ninth Circuit delineated the proper standard to apply in determining whether a particular activity was the type of event necessary to bring a defendant within the scope of Rule 4(e)(2):

> "Amba's bare allegation of harm or injury suffered in the forum state does not by itself confer personal jurisdiction under Arizona's long arm rule . . . Rather the actual damage-causing event must have occurred in Arizona, not merely the effect of the event. Thus, the mere fact that Amba may have suffered injury to its reputation, dilution of the value of its trademark and damages from expected profits lost as a result of Jobar or the California mail order house's sale

of the cheaper imitations in states other than Arizona seemingly would not suffice to invoke personal jurisdiction in Arizona. We therefore conclude that the requirements of Rule 4(e)(2) have not been satisfied."

*Amba Marketing Systems, Inc., supra*, at 788.

■ The question is what constitutes the actual damage-causing event necessary to give jurisdiction under 4(e)(2). Under current Arizona law, the sending of a letter guaranteeing to back up a loan to a bank in Arizona is sufficient to guarantee personal jurisdiction. *Hamada v. Valley National Bank*, 27 Ariz.App. 433, 555 P.2d 1121 (1976). In its most recent decision on 4(e)(2) jurisdiction, the Arizona Supreme Court has indicated that the assignment of an out of state lease to an Arizona corporation was sufficient to confer jurisdiction where new provisions of that lease were negotiated and executed in Arizona and these new provisions were subsequently violated by the out of state defendant. *Manufacturer's Lease Plans v. Alverson Draughton College*, 1977, Ariz., 565 P.2d 864. Thus, the consummation and breach of a contract in Arizona is a damage-causing event conferring jurisdiction upon the Arizona courts. *Molybdenum Corp. v. Superior Court*, 17 Ariz.App. 354, 498 P.2d 166 (1972). However, the record here reveals that the series of five transactions were made, orally by defendant over the phone in Colorado; there was no direct Arizona contact at all. Both the consummation and breach (if any) of the contract(s) occurred in Colorado. Since the damages suffered by the plaintiff cannot be considered an "event" under 4(e)(2), *see Amba, supra,* the only question is whether the shipping of the fruit and vegetables from Arizona to Colorado can be construed as the type of event necessary to confer jurisdiction. It appears not.

The case most favorable to the plaintiff's position is *Powder Horn Nursery Inc. v. Soil and Plant Lab Inc.*, 20 Ariz.App. 517, 514 P.2d 270 (1973). In *Powder Horn*, the contract between the plaintiff and defendant corporation was negotiated in California.

On a total of six occasions between 1969 and 1970, soil samples were mailed from plaintiff in Arizona to the defendant corporation in California. The results together with the recommendations were returned by mail to the plaintiff in Scottsdale, Arizona. This relationship continued through 1969 and a portion of 1970. The defendant corporation had offices in California, Washington and also with customers in foreign countries. It had sporadic requests for services from Arizona, but had no agents or representatives in Arizona. The plaintiff was the defendant's only Arizona customer. No representatives or agent had ever been in Arizona concerning the corporation's business, and the corporation owned no property in Arizona.

While *Powder Horn Nursery* involved an out of state series of transactions that ultimately caused damage in Arizona, there are quite some differences between our facts and those of the *Powder Horn* case. First, the *Powder Horn Nursery* case emphasized that the actual event causing the damage did occur in Arizona. *Id.* at 520, 514 P.2d at 273. The wrong soil analysis ultimately caused the damage to the nursery's stock. The *Powder Horn Nursery* court gave no indication that the mere shipping of the soil samples to Arizona conferred jurisdiction under 4(e)(2). If the soil samples had remained satisfactory to the *Powder Horn Nursery* plaintiff, and if the dispute had simply involved a breach of the original contract, it is reasonable to assume that the Arizona plaintiff would have been forced to seek relief in the California courts. The mere shipping of plaintiff's products (vegetables) to Colorado, despite the number of transactions involved (5), does not under the circumstances of this case constitute the damage-causing event necessary for 4(e)(2) jurisdiction. The damage-causing event here involved was the apparent breach of the contract in Colorado.

■ Even assuming the mere shipment of goods from Arizona to Colorado was sufficient to cause an "event" to occur in Arizona, it still must be determined whether these constitute sufficient minimum contacts between the forum state and the defendant so as to make it constitutionally permissible to proceed with this lawsuit in this Court. *McGee v. International Life Ins. Co.*, 355 U.S. 320, 78 S.Ct. 199, 2 L.Ed.2d (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ In *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 413 P.2d 732 (1966), the Arizona Supreme Court outlined a test for determining whether there were sufficient contacts between Arizona and the defendant to make exercise of Rule 4(e)(2) jurisdiction constitutionally permissible. In determining whether assumption of jurisdiction by Arizona will offend traditional notions of fair play and substantial justice, consideration must be given to the quality, nature and extent of the defendant's activity in the state; was it purposeful? Also, what is the relative convenience of the parties, the benefits and protections of Arizona laws afforded the parties and any other basic equities of the situation. *Id.* at 260, 413 P.2d at 738. A close review of this case file indicates that it is almost impossible to apply this test to the case at hand. The Court knows virtually nothing about the relative economic status of the parties, their business volume, etc. In particular, there is no evidence concerning the economic independence of the plaintiff. While plaintiff claims to be a single individual, it is worth noting that he had at least one corporate agent in Colorado and he apparently ships interstate. *See* Brokers' Memorandums attached to defendant's motion to dismiss and plaintiff's exhibits, attached to the complaint. There is no evidence as to what law would govern the contract (it could be assumed to be Colorado's U.C.C.) nor is there any evidence as to where most of the relevant witnesses reside or where the evidence is located (again, it would seem to be Colorado). This aspect of the case could have been better covered by the briefs, but since it wasn't, it doesn't appear to be necessary to delay disposition of this case to explore it further.

On the basis of what this record reveals, there are not sufficient minimum contacts to hold the defendant under 4(e)(2). *Manufacturer's Lease Plans Inc., supra,* is instructive on this point. In holding that the defendant in *Manufacturer's Lease Plans Inc.,* was subject to personal jurisdiction under 4(e)(2), the Arizona Supreme Court noted that: (1) the out of state defendant was entitled to special consideration since it was a consumer; and (2) while the defendant was a consumer, it was a non-passive one. The latter was true because the buyer-consumer had tied itself commercially with Arizona by renegotiating a renewal contract with an Arizona corporation in Arizona. Further, the renewal contract stated that the agreement was to be governed by Arizona law. This constituted "purposeful" activity under the *Anchor Hocking* test and made it fair to assert personal jurisdiction by the Arizona courts. Further, the large amount of money due and the period involved in the contract—1 year—were additional factors that increased the defendant's intimacy with Arizona. *Manufacturer's Lease Plans Inc., supra,* at 866–867.

It is a close question under the liberal view of Arizona courts as to whether defendant in our case had sufficient contacts with Arizona to allow jurisdiction under 4(e)(2). It should be noted that the defendant did initiate the sales, that there is a large amount of money involved and that a series of five business transactions are involved, rather than a single contract. There can be little doubt that defendant's activity was purposeful in the sense that it must have known that the goods would be shipped from Arizona and that it was dealing with an Arizona corporation. Further, it can be inferred that the defendant is hardly a small consumer, but a rather large corporation, a consumer for profit. These factors can all be considered to point towards a finding of jurisdiction.

On the other hand, however, there was absolutely no direct contact between the defendant and Arizona and the defendant appears to be strictly a passive consumer, much more so than the defendant in *Manu-*

*facturer's Lease Plans, Inc.* The defendant simply placed an order with the seller and probably acquiesced to the seller's terms of sale, arrangement of shipments, etc.

The basic question remains whether the activities of the defendant were sufficiently foreseeable or purposeful to justify the exercise of jurisdiction by this Court. It does not appear here that there are sufficient contacts to be constitutionally valid under any valid due process criteria. In *McGee, supra,* the United States Supreme Court stated that it was sufficient for due process if the suit was based on a contract which had a substantial connection with the forum state. In view of the purposeful activities of the defendant corporation there is a connection with Arizona, but it can hardly be termed substantial. *Also see Tiffany Records v. M. B. Krupp 8th St. Inc.,* 276 Cal. App.2d 610, 81 Cal.Rptr. 320 (1969).

When the existence of personal jurisdiction under "long arm" statutes is challenged, as here, the burden of establishing a basis for such jurisdiction is on the party asserting it. *Taylor v. Portland Paramount Corp.,* 383 F.2d 634 (9th Cir. 1967); *Manufacturer's Lease Plans, supra; Pegler v. Sullivan,* 6 Ariz.App. 338, 432 P.2d 593. Here the plaintiff has failed to carry his burden, even under the liberal view of such jurisdictional issue as reflected by the Arizona cases such as *Manufacturer's Lease Plans, Powder Horn* and *Lycoming.*

One further matter, worthy of note, is the fact that plaintiff instituted a state court action against this same defendant on this same claim in Colorado and dismissed it without prejudice. Standing alone, this may not be determinative of anything, but taken in context of this case, it would appear that even plaintiff earlier concluded that it was proper or more appropriate to file this action in Colorado. Neither side has elaborated further on this matter in any way.

In view of the fact that this case should be dismissed on defendant's motion under Rule 12(b)(2), there is no need to discuss defendant's alternative motion for change of venue.

IT IS ORDERED that defendant's motion to dismiss this complaint for lack of jurisdiction in this Court, is granted; same shall be dismissed.

IT IS FURTHER ORDERED that the Clerk of this Court forthwith mail a copy of this Order to all counsel of record.