542 P.2d 24

Raymond C. HOUGHTON and Wanda Houghton, on behalf of themselves and as the surviving parents of Lisa Rae Houghton, Deceased, Appellants,

v.

PIPER AIRCRAFT CORPORATION, and Sensenich Corporation, Appellees.

No. 12013.

Supreme Court of Arizona,
In Banc.

Nov. 6, 1975.
Rehearing Denied Dec. 9, 1975.

Treon, Warnicke & Dann, P. A. by Richard T. Treon, Phoenix, for appellants.

Fennemore, Craig, von Ammon & Udall, Phoenix by Calvin H. Udall, John D. Lyons, Jr., Phoenix, for appellee, Piper Aircraft Corp.

Snell & Wilmer by Warren E. Platt, Peter J. Rathwell, Phoenix, for appellee, Sensenich Corp.

GORDON, Justice:

Appellants, Raymond and Wanda Houghton on behalf of themselves and their deceased daughter, Lisa Rae, appeal from orders granting summary judgment in favor of appellees, Piper Aircraft Corporation and Sensenich Corporation. The plaintiffs sought to recover damages incurred as the result of the crash landing of their private airplane when the propeller apparently broke while they were flying over the City of Los Angeles. Lisa Rae was killed instantly upon impact, Raymond and Wanda Houghton received extensive injuries, and the aircraft was severely damaged.

Raymond Houghton purchased his plane, a Piper Cherokee 180, from Delaware Aviation Corporation in Philadelphia, Pennsylvania on March 23, 1966. At that

time he was a resident of Whitney Point, New York. In May of 1969 the Houghtons moved to California when Raymond was placed on temporary assignment by his employer in the Los Angeles area. The crash occurred on August 10, 1969, soon after the Houghtons took off on a flight from Los Angeles to San Francisco. The Houghtons came to Arizona the following month.

The sole issue in dispute is whether the trial court erred by granting the defendants' motions for summary judgment on the ground that it lacked personal jurisdiction over Piper, who manufactured the aircraft, and Sensenich, who manufactured the propeller. Arizona's long arm statute is contained in Rule 4(e)(2) of the Arizona Rules of Civil Procedure and is intended to give Arizona residents the maximum privileges permitted by the Constitution of the United States. See *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Rule 4(e)(2) states:

> "Summons; personal service out of state. When the defendant is a *resident* of this state, or is a corporation *doing business* in this state, or is a person, partnership, corporation or unincorporated association subject to suit in a common name which has *caused an event* to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state." (Emphasis added.)

When the existence of personal jurisdiction under the long arm statute is appropriately challenged, as in this case, the party asserting jurisdiction has the burden of establishing it. *Deere & Company v. Superior Court,* 18 Ariz.App. 491, 503 P.2d 967 (1972); *Pegler v. Sullivan,* 6 Ariz. App. 338, 432 P.2d 593 (1967).

## RESIDENCY

It is undisputed that neither Piper Aircraft nor Sensenich are residents of the State of Arizona. The Houghtons are presently Arizona residents but were not at the time of the accident. To be domiciled in this state a person must possess the requisite intent to permanently remain and be physically present. *Arizona Board of Regents v. Harper,* 108 Ariz. 223, 495 P.2d 453 (1972). The burden of proof is on the party alleging that a former domicile has been abandoned in favor of a new one. *Jizmejian v. Jizmejian,* 16 Ariz.App. 270, 492 P.2d 1208 (1972). While there is strong evidence that the plaintiffs intended to become Arizona residents, their overnight stop in Phoenix to rest and refuel when moving from New York to California did not constitute sufficient "presence" in this state to establish Arizona as their domicile at that point. It was not until September of 1971, when their actual presence and intent to permanently remain in Arizona coincided, that this state became their domicile. *McIntosh v. Maricopa County,* 73 Ariz. 366, 241 P.2d 801 (1952).

## DOING BUSINESS

The term "doing business" under Rule 4(e)(2) refers to "a systematic and continuous course of conduct within the state by the defendant over whom jurisdiction is asserted." *Lycoming Division of Avco Corp. v. Superior Court,* 22 Ariz. App. 150, 524 P.2d 1323 (1974). In addition, due process requires "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* supra; *Phillips v. Anchor Hocking Glass Corp.,* 100 Ariz. 251, 413 P.2d 732 (1966).

In this case both Piper and Sensenich are foreign corporations which sell their

products to independent distributors in Arizona. Neither corporation has any subsidiaries, offices, employees, bank accounts, records or property in this state. Piper sells its aircraft F.A.F. (fly away factory) at either Lock Haven, Pennsylvania or Vero Beach, Florida. Sensenich sells its products F.O.B. Lancaster, Pennsylvania.

Under the facts of this case neither corporation has carried on sufficient forum related activities to establish the "minimum contacts" or doing of business necessary for the Arizona trial court to exercise personal jurisdiction. The mere presence in this state of products manufactured by Piper and Sensenich is insufficient to establish personal jurisdiction. *Lycoming Division of Avco Corporation v. Superior Court,* supra. Sales of these products by independent distributors in Arizona are clearly distinguishable from direct sales to the public by the manufacturing corporations:

"* * * [M]ore contacts are required for the assumption of such extensive [personal] jurisdiction than sales and sales promotion within the state by independent nonexclusive sales representatives. (citations omitted) To hold otherwise would subject any corporation that promotes the sales of its goods on a nationwide basis to suit anywhere in the United States without regard to other considerations bearing on 'the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.' *International Shoe Co. v. State of Washington,* supra * * *." *Fisher Governor Company v. Superior Court,* 53 Cal.2d 222, at 225, 1 Cal.Rptr. 1, at 3, 347 P.2d 1, at 3 (1959).

In another case involving Piper, *Smith v. Piper Aircraft Corporation,* 425 F.2d 823 (5th Cir. 1970), the court concluded in language applicable to both corporate defendants in this case that Piper was not subject to personal jurisdiction in a state where *it* merely sold its products to independent dealers:

"* * * [t]he subsequent sales of defendant's aircraft in Georgia are carried on by independent distributors, not by agents of defendant, so that these sales do not constitute sales *by the defendant* 'in person or through an agent'.

* * * * * *

"At no time did defendant manufacture any of his aircraft in Georgia, and he does not do so now. Nor does defendant sell the completed aircraft in Georgia. All aircraft are sold to independent distributors F.O.B. factory in Florida or Pennsylvania. It is only when these distributors bring the aircraft into Georgia and sell them to Georgia customers that the defendant's product comes into Georgia. Since the distributors are independent contractors and are not acting on behalf of defendant, none of their sales can be considered acts of the defendant." 425 F.2d at 825–26.

We hold, therefore, that Piper and Sensenich were not "doing business" in Arizona simply because they sold goods F.A.F. and F.O.B. Pennsylvania to independent dealers in this state. Such activity clearly does not constitute "a systematic and continuous course of conduct within the state by the defendant[s] over whom jurisdiction is asserted." *Lycoming Division of Avco Corporation v. Superior Court,* supra. This conclusion does not exalt the outward form of business transactions over economic reality, but rather recognizes the overall paucity of contacts that all of the parties and this controversy have with this state.

## CAUSING AN EVENT

The appellants allege that Piper and Sensenich "caused an event to occur in this state out of which the claim * * * arose" because their pain and suffering, including emotional distress over the death of their daughter, continued after they became residents of Arizona less than a month after the accident. The appellants cite two cases, *Powder Horn Nursery, Inc.*

*v. Soil & Plant Laboratory, Inc.,* 20 Ariz. App. 517, 514 P.2d 270 (1973), and *Pegler v. Sullivan,* supra, which they claim support their rationale. We do not agree. Both cases arose out of fact situations where the actual damage causing *events* occurred in this state, rather than merely the *effects* of those events.

In *Powder Horn Nursery, Inc. v. Soil & Plant Laboratory,* supra, "the defendant [California] corporation engaged in sustained contractual activity, purposefully calculated and intended to have a direct effect in its application to the plaintiff's nursery operation in Scottsdale, Arizona." In *Pegler* the court concluded that any invasion of the defendant's right to privacy resulting from a telecast necessarily occurred in Arizona because "Pegler's residence was here and so were his sensibilities." The court added that the defendant's actions were "voluntary, purposeful, reasonably foreseeable and calculated to have effect in Arizona, * * * and these findings constitute 'minimum contacts' with Arizona." *Pegler v. Sullivan,* supra. In neither case did the Court of Appeals use the words "event" and "effect" interchangeably, as appellant contends in his brief.

In this case the accident occurred in California. The aircraft and propeller were manufactured outside of Arizona and purchased in Pennsylvania, from Pennsylvania corporations while the Houghtons were residing in New York. The only contact this case has with this state is that the plaintiffs became residents of Arizona between the date the accident occurred and the date this suit was filed. The fact that the appellants continue to endure the effects of the accident as Arizona residents does not establish a damage causing "event * * * out of which the claim * * * arose" within the meaning of Rule 4(e)(2). See *Anderson v. Matson Navigation Co.,* 336 F.Supp. 1388 (D.Minn.1971); *Black v. Oberle Rentals, Inc.,* 55 Misc.2d 398, 285 N.Y.S.2d 226 (1967). To hold otherwise would encourage forum shopping, as the effects of a party's injury would follow him to whatever location he considered most advantageous to press his claim. Assumption of jurisdiction by Arizona under the facts of this case would clearly violate the due process requirement that a defendant have "minimum contacts" with the forum state and would "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* supra.

The trial court's orders granting the defendants' motions for summary judgment are affirmed.

STRUCKMEYER, V. C. J., HAYS and HOLOHAN, JJ., and ROBERT C. BROOMFIELD, Superior Court Judge, concur.

Note: CAMERON, C. J., did not participate in the determination of this matter and ROBERT C. BROOMFIELD, Judge, sat in his stead.