**Helen LEAKS, Plaintiff,**

v.

**EX–LAX, INC., et al., Defendants.**

**Civ. A. No. 76–0489.**

United States District Court, District of Columbia.

Dec. 23, 1976.

---

Richard Price, Washington, D. C., for plaintiff.

Richard W. Boone, Dwight D. Murray, Washington, D. C., for defendant, Safeway Stores, Inc.

James C. Gregg, David M. Moore, Washington, D. C., for defendant, Ex-Lax, Inc.

### ORDER

CHARLES R. RICHEY, District Judge.

This case is before the Court on plaintiff's motion to vacate a prior order of dismissal entered by the Court, defendant Ex-Lax's motion to dismiss for lack of *in personam* jurisdiction as to said defendant, and defendant Safeway Stores, Inc.'s motion to transfer venue to the United States District Court for the District of Arizona.

This Court dismissed this case on October 8, 1976, because of the unexplained failure of plaintiff's counsel to appear at a status call scheduled for that date. Upon consideration of the representations of counsel at oral argument of these motions before the Court and the positions of the parties as set forth in their briefs, the Court concludes that counsel's failure to appear was due to "excusable neglect," and that relief under Fed.R.Civ.P. 60(b) is therefore appropriate. Accordingly, the Court will grant plaintiff's motion to vacate the prior order of dismissal.

Turning to the motion to dismiss defendant Ex-Lax from the case, the Court notes first that plaintiffs assert long-arm jurisdiction over said defendant under 13 D.C.Code § 423(a)(4) (1973),[1] which provides, in pertinent part, that:

---

1. The District of Columbia's long-arm statute is available to this Court, in its exercise of *in personam* jurisdiction under Fed.R.Civ.P. 4(e).

(a) a District of Columbia Court may exercise personal jurisdiction over a person [2] who acts directly or by an agent, as to a claim for relief arising from the person's—

.    .    .    .    .

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia

.    .    .    .

Assuming, as seems likely, that Ex-Lax "derives substantial revenue from goods used or consumed" in the District, the question before the Court is whether the allegedly tortious act involved in this case caused tortious injury in the District, even though that act was performed outside the District.

For purposes of the instant motion only, defendant Ex-Lax has admitted the allegations of plaintiff's complaint as corroborated by her deposition. Those allegations, as pertinent to this motion, are as follows: Plaintiff was in Phoenix, Arizona on March 26, 1974, in connection with her occupation as promoter and manager of an entertainment group. On that day, she purchased a package of eight Ex-Lax pills and consumed two of them in accordance with the instructions on the package. Within two-and-a-half hours after she consumed the pills, she began to suffer a severe reaction to them. She went to the emergency room of a hospital in Phoenix for treatment. She later saw a private physician in Phoenix, who prescribed medication for her. She left Phoenix in the first week of April, but did not return to her home in the District of Columbia until some time in May.

Plaintiff alleges that Ex-Lax's pills were and are unfit for human consumption because they contain several allegedly repugnant ingredients. She also alleges that as a result of consuming two of defendant's defective products, she suffered severe physical injuries, which have necessitated medical treatment until the present time. She also alleges that she has suffered mental anguish requiring medical treatment.

Defendant Ex-Lax's position on the question before the Court is that plaintiff took the pills in Arizona; she received emergency medical treatment in Arizona; she later saw a physician in Arizona; and she did not return to this jurisdiction until more than a month after she consumed the allegedly defective product. Thus, defendant maintains, it is clear that both the allegedly tortious act *and* the injury occurred in Arizona.

Plaintiff's position is that the injury occurred in the District because "plaintiff suffered extreme physical and mental injury on a continuing basis in the District of Columbia, as well as severe financial injury from the fact that the physical injury prevented her from further carrying on her business activities and resulted in the loss of substantial income which still continues to this day." Plaintiff's brief in opposition to defendant's motion to dismiss, at 4 (Aug. 19, 1976).

It is the Court's view that plaintiff's position is supported neither by the plain meaning of the language of § 423(a)(4), nor by the pertinent legal authorities. As noted above, plaintiff took the pills in Arizona, suffered the reaction there, and was treated there. To allege that plaintiff's continuing pain shifts the site of the injury to this District would also mean that *any* jurisdiction to which plaintiff has travelled since she consumed the pills and which has a similar long-arm provision would be an appropriate forum for this lawsuit, for the continuing pain (the "injury" under plaintiff's reasoning) would have been felt in any such potential forum.

Plaintiff relies on the recent case of *Aiken v. Lustine Chevrolet, Inc.,* 392 F.Supp.

---

**2.** The definition of "person" under 13 D.C.Code § 423(a)(4) includes a corporation. 13 D.C. Code § 421 (1973).

883 (D.D.C.1975), but that case, in this Court's view, is entirely distinguishable. In *Aiken,* plaintiff alleged that defendant's salesman falsely and fraudulently represented to her that she could purchase a new car from defendant with the right to return the car within ten days if she were not fully satisfied; when she attempted to do so, defendant refused to accept the car. She claimed that she was injured in that her credit rating was damaged and she suffered resultant harm to her mental and emotional well-being. District Judge Gasch ruled that the only place such injuries could have been maintained was where she lived, in the District. He warned, however, that in cases brought under § 423(a)(4), it is necessary to distinguish between "the injury suffered and any pecuniary losses, which are merely one measure of such an injury." *Id.* at 886. In the case at bar, in which the actual physical injury and resultant treatment occurred in Arizona, it seems that plaintiff's claim as to the effect said injury has had on her livelihood would go to her pecuniary losses, "one measure of such an injury," as Judge Gasch wrote.

The instant case is, therefore, much more similar to *Norair Engineering Association, Inc. v. Noland Co.,* 365 F.Supp. 740 (D.D.C. 1973), than to *Aiken.* In *Norair,* plaintiffs charged that defendant, a manufacturer of certain types of steel tubing, had provided plaintiff with defective tubing for a housing project which plaintiffs built in West Virginia. Plaintiffs' principal places of business were in the District of Columbia (just as plaintiff in the instant case is "based" in the District). The *Norair* plaintiffs alleged that they had sustained injury in the District because they had to borrow money and reach into corporate reserves in the District in order to cover for the losses caused by the defective tubing in West Virginia. Judge Gasch ruled that plaintiffs had not properly alleged tortious injury in the District, within the meaning of that phrase in the long-arm statute. As in the instant case, the "injuries" alleged in the District were actually descriptions of pecuniary losses, which are merely measures of such injuries. Thus, the *Norair* court found

that it lacked personal jurisdiction over the defendant.

The Court has discovered authority from another jurisdiction, the State of New York, which supports this Court's reading of § 423(a)(4). New York's long-arm statute includes a provision granting personal jurisdiction over those entities which have the requisite minimal contacts with the state and which commit "a tortious act without the state causing injury to person or property within the state . . . ." N.Y. CPLR § 302(a)(3) (McKinney). In *Black v. Oberle Rentals, Inc.,* 55 Misc.2d 398, 285 N.Y.S.2d 226 (Sup.Ct.1967), plaintiff, a New York resident, was involved in an accident in his auto-trailer in Massachusetts. Defendants, who sold the trailer involved in the accident to the plaintiff, attempted to sue an Indiana trailer parts manufacturer as a third-party defendant, and the manufacturer moved to dismiss for lack of personal jurisdiction. The question before the Court was whether, given an allegedly tortious act (negligent manufacturing) in Indiana, the resultant injury to plaintiff could be viewed as having occurred in New York, plaintiff's domicile, even though the accident occurred in Massachusetts. In answering the question in the negative, the Court wrote:

> Certainly every person injured in an accident has resultant damage as well as the personal injury. He may suffer lost earnings, diminution of earning capacity, long periods of convalescence, and all such attendant damages. Conceptually, it is difficult for this Court to hold that [the victim of] a personal or property injury in another state by virtue of a tortious act committed in that state can be said to have suffered some injury within the State of New York simply because he is domiciled here. In other words, [the long-arm provision] looks to the imparting of the original injury within the State of New York and not resultant damage, in order that jurisdiction might be effectuated. To hold otherwise would open a veritable Pandora's Box of litigation subjecting every conceivable

prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York. This is hardly the minimal contact with the State prerequisite to the exercise of its power over a prospective defendant. *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

285 N.Y.S.2d at 229. *Accord, American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 432–35 (2d Cir. 1971).

■ The final motion for the Court's consideration is Safeway's motion to transfer venue to the federal district court in Arizona, pursuant to 28 U.S.C. § 1404(a). While it is true that there are some factors mitigating in favor of transfer, particularly the location in Arizona of witnesses important to the case, defendant has not carried its burden in attempting to disturb plaintiff's choice of forum. *E. g., Golconda Mining Corp. v. Herlands,* 365 F.2d 856, 857 (2d Cir. 1966). Especially in light of the great inconvenience which transfer to the distant proposed forum would cause for plaintiff, the Court is convinced that transfer would not be appropriate.[3]

In accordance with the foregoing, it is, by the Court, this 23rd day of December, 1976,

ORDERED, that plaintiff's motion to vacate this Court's prior dismissal of this action, pursuant to Fed.R.Civ.P. 60(b), be and the same hereby is, granted; and it is

FURTHER ORDERED, that defendant Ex-Lax, Inc.'s motion to dismiss as to it for lack of *in personam* jurisdiction be, and the same hereby is, granted, and said defendant shall be, and the same hereby is, dismissed from this case; and it is

FURTHER ORDERED, that defendant Safeway Stores, Inc.'s motion to transfer venue, pursuant to 28 U.S.C. § 1404(a), be, and the same hereby is, denied.

**3.** Of course, with defendant Ex-Lax dismissed from the case by virtue of the instant order, plaintiff may wish to voluntarily dismiss this case and sue in Arizona where *in personam*

jurisdiction over both defendants may well be available. *See Houghton v. Piper Aircraft Corp.,* 112 Ariz. 365, 542 P.2d 24 (1975).