Pamela Diane BACH, surviving widow of First Lieutenant Robert M. Bach, deceased, and Pamela Diane Bach as personal representative of Corey Bach, Tessa Bach, and Tiffany Bach, minors, Plaintiffs,

v.

McDONNELL DOUGLAS, INC., a foreign corporation, Martin-Baker, a foreign corporation, Defendants.

No. CIV 78–104–TUC–WCF.

United States District Court, D. Arizona.

Jan. 23, 1979.

Dale Haralson, Tucson, Ariz., Wallace Craig, Fort Worth, Tex., for plaintiffs.

Jack Redhair, Tucson, Ariz., for defendants.

## ORDER DENYING MOTION TO DISMISS

FREY, District Judge.

The issue before this Court at this time is whether Arizona courts could, and would, constitutionally claim jurisdiction over an English designer and manufacturer[1] of ejector seats for military aircraft which allegedly caused the death, in Arizona, of a non-Arizona resident.

1. Martin-Baker in its memorandum filed June 20, 1978, in support of its motion to dismiss (page 3) states:

"Martin-Baker Co., Ltd., does not manufacture escape systems. Martin-Baker is only involved with the design and sale thereof. The ejection seats themselves are manufactured by Martin-Baker (Engineering) Ltd. in Higher Denham, England. This company does no business except manufacturing ejection seats and associated items, and all sales of its products are made by Martin-Baker. Martin-Baker (Engineering) Ltd. is not now, nor has it ever been, engaged in the manufacture of ejection systems and components in Arizona. Martin-Baker (Engineering) Ltd. is not a defendant in this action."

## FACTS

According to the complaint of plaintiff Pamela Diane Bach, on October 22, 1975, First Lieutenant Robert M. Bach and Captain Robert D. Anderson commenced an aerial reconnaissance flight from the Marine Air Base at El Toro, California. It appears that Lieutenant Bach lost control of the airplane and ordered an ejection from the plane. Anderson ejected from the plane, then in Arizona, and survived. Lieutenant Bach died. Plaintiff[2], a citizen of Idaho, filed this action in the Superior Court of Arizona seeking recovery for claims arising out of the accident. Defendant McDonnell Douglas, Inc., petitioned for removal of the action to the United States District Court, apparently relying on Title 28, United States Code, Sections 1332(a) and 1441. Defendant Martin-Baker joined the petition for removal, expressly stating it did not waive its right to object to personal jurisdiction in any court sitting in Arizona.

Martin-Baker, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (FRCP), moves to be dismissed from this action because this Court lacks personal jurisdiction. Defendant's motion to dismiss is supported by an uncontroverted declaration of D. J. Burrell[3], Assistant Managing Director of Martin-Baker, which claims the following:

1. Martin-Baker is a company organized under the laws of England which is also its principal place of business.

Since any distinction between Martin-Baker Co., Ltd., and Martin-Baker (Engineering) Ltd., appears to be highly technical, both will be included in the Court's use and understanding of "Martin-Baker".

2. Plaintiff Pamela Diane Bach sues as Lieutenant Bach's surviving widow and as personal representative of Corey, Tessa and Tiffany Bach.

3. Martin-Baker has attached a second declaration of attorney, Robert Batson, containing information about the fatal mission and records received from the Department of Navy pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552. The contents of these offerings do not significantly advance defendant's position in this motion.

2. Martin-Baker has never been licensed to transact business, has never transacted business, and has never owned property in Arizona.

3. Martin-Baker is exclusively engaged in the design and sale of ejection seats or immediately associated items for incorporation and installation in military aircraft. Seats sold to the United States are specially manufactured and designed in response to detailed government specifications and are not sold from general inventory.

4. The ejection seat at issue in this action was sold and delivered in England to McDonnell Douglas Aircraft Company which later installed the equipment in a military aircraft which was sold to the United States Armed Forces.

5. Martin-Baker has never had any agent, representative, or employee in Arizona except from 1967–1969 when it had, under contract, a technical representative with the Tactical Air Command located at the Davis-Monthan Air Force Base.

### PERSONAL JURISDICTION IN ARIZONA

■ It is the plaintiff's burden to allege that a court has personal jurisdiction over a defendant. *Forsythe v. Overmyer,* 576 F.2d 779, 781 (9th Cir. 1978). Plaintiff Bach satisfied this present day, notice-oriented requirement. Where a defendant properly challenges plaintiff's jurisdictional allegations, the burden of proving personal jurisdiction shifts back to plaintiff. *Id.* Information produced by affidavit is proper in a Rule 12(b)(2) motion contesting jurisdiction. Moore's Federal Practice, Volume 2A, Section 12.14.

■ Since this case was removed from an Arizona Court, this Court has personal jurisdiction only if the Arizona Court from which it was removed, could properly assert jurisdiction. *Aanestad v. Beech Aircraft Corporation,* 521 F.2d 1298, 1300 (9th Cir. 1974). To resolve an issue of personal jurisdiction two inquiries must be addressed. First, whether an applicable state rule or statute potentially confers personal jurisdiction over the defendant. Second, whether assertion of such jurisdiction accords with constitutional principles of due process. *Amba Marketing Inc. v. Jobar Inc.,* 551 F.2d 784, 788 (9th Cir. 1977).

Arizona Rule 4(e)(2) of Civil Procedure states:

"When the defendant is a resident of this state, or is a corporation doing business in this state, or is a person, partnership, corporation or unincorporated association subject to suit in a common name which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state."

This rule is intended to allow Arizona Courts to exercise, on behalf of Arizona residents, its jurisdiction to the maximum degree permitted by the United States Constitution. *Phillips v. Anchor Hocking Glass Corporation,* 100 Ariz. 251, 254, 413 P.2d 732, 733 (1966). A defendant cannot be considered to be "doing business" in Arizona unless engaged in a systematic end continuous course of business. *Houghton v. Piper Aircraft Corporation,* 112 Ariz. 365, 367, 542 P.2d 24, 27 (1975). It is apparent that Martin-Baker does not do business under this standard. But this does not immunize it from Arizona's claim of jurisdiction over those who have caused an event to occur in Arizona. Assuming the truth of the allegations in plaintiff's complaint, Martin-Baker's conduct was a contributing cause to. Lieutenant Bach's accident and death in Arizona which appears to bring it within Arizona's Rule 4(e)(2).

■ Defendant argues that since neither plaintiff nor decedent have ever been residents of Arizona, that Arizona Courts have no jurisdiction because they have no interest in providing a forum for this case. However, a state is not prohibited from allowing its courts to be used for suits between non-residents. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 446–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Congress in its 1966 amendment to Title 28,

United States Code, Section 1391(a) (which liberalized venue in federal courts to include the judicial district where the claims arose, *see* 89th Cong., U.S.Code Cong. & Admin.News, pp. 3693–95 [1966]), facilitated adjudication of cases of non-residents similar to the one before this Court. In *Phillips, supra,* the Arizona Supreme Court indicated fairness to the plaintiff was one of the foremost concerns in its jurisdictional analysis of a "stream of commerce" products liability case. *Id.* 100 Ariz. at 255, 413 P.2d 732. Considering the accident complained of occurred in Arizona and this is the only federal judicial district where venue appears to be proper over all defendants, plaintiff appears, at least at this time on this record, to have made a reasonable choice of forum regardless of her Idaho citizenship.[4]

Martin-Baker suggests that the case of *Houghton v. Piper Aircraft Corporation,* 112 Ariz. 365, 367, 542 P.2d 24 (1975) indicates Arizona Courts would not allow themselves to be used as a forum in this case. *Houghton* involved an airplane accident which occurred in another state. Survivors of the decedent in *Houghton* later moved to Arizona where they continued to suffer the pain of the loss of decedent. The Arizona Supreme Court held it did not have jurisdiction over the defendant. It noted that the only connection Arizona had to the facts of that case was as the site of plaintiffs' continued suffering. *Id.,* 542 P.2d at 28. The court clearly distinguished jurisdictional claims based on Arizona's being the site of an *event* caused by a defendant as opposed to being the site of an *effect* of an event

which occurred elsewhere. *Id.,* 542 P.2d at 27. In this case plaintiff has alleged an event, not merely an effect, has been caused by Martin-Baker to occur in Arizona.

A more difficult obstacle for plaintiff to overcome is Martin-Baker's claim that the standards for assertion of jurisdiction for Arizona Courts as set forth in *Maloof v. Raper Sales, Inc.,* 113 Ariz. 485, 557 P.2d 522 (1976) have not been met. Plaintiff in *Maloof* complained of the negligence of auto repair businesses located in Ohio and Indiana. This negligence allegedly caused, (or failed to correct), a malfunction in plaintiff's mobile home which resulted in serious personal injuries to the Arizona plaintiff. Following principles originally set forth in *Phillips v. Anchor Hocking Glass Corporation,* 100 Ariz. 251, 413 P.2d 732 (1966), the Arizona Supreme Court in *Maloof* dismissed the complaint without prejudice, because of insufficient allegations regarding: (1) the nature of the alleged cause of action; (2) the size of defendants' businesses, and (3) the plaintiff's economic status. *Id.,* 557 P.2d at 526.[5]

Plaintiff clearly has met the first of the above listed requirements. Regarding requirement (2), plaintiff has filed an affidavit purporting to give information pertaining to the size of defendant Martin-Baker's operations by estimating the number of Martin-Baker ejector seats currently within the State of Arizona.[6] Defendant correctly attacks the form of plaintiff's affidavit as improper since it clearly does not contain the foundation required for such

---

4. There is doubt concerning whether plaintiff could successfully assert jurisdiction over Martin-Baker were she to sue in Idaho. *See Cox v. McDonnell Douglas,* Civ. No. A–78–A–78–CA 003 (W.D.Tex., on reconsideration filed Nov. 7, 1978) where defendant Martin-Baker successfully argued that the United States District Court for the Western District of Texas had no jurisdiction where the plaintiff was a Texas resident and the aircraft accident occurred in Idaho. (A copy of the *Cox* decision is included in defendant's submission of material filed with this Court Nov. 16, 1978).

5. These considerations are not meant to be exclusive.

6. The affidavit states:
"My name is JAMES E. HAYES and I am an Aeronautical Engineer with a Ph.D. in Engineering from the University of Oklahoma. I have over twenty years industrial experience in a wide variety of aeronautical engineering tasks covering aircraft, helicopter, spacecraft, and ground support equipment.
"Based upon my personal investigations, I have determined that there are approximately 600 Martin-Baker seats presently located in the State of Arizona."

evidence to be considered by the Court.[7] However, in its written argument Martin-Baker appears to concede the existence of some seats in Arizona.[8] Counsel for defendant has also provided the Court with cases from three other separate United States District Courts where Martin-Baker challenged assertions of personal jurisdiction in causes of actions arising out of accidents of military aircraft. While more details of Martin-Baker's business would be preferable, it appears fair, based on information before the Court, to conclude that the defendant is a substantial enterprise which is financially able and capable of defending its interests in a number of states of this nation.

 *Maloof* can be read to require disclosure of financial worth of the plaintiff before jurisdiction may be asserted under Arizona Rule 4(e)(2) over an out of state defendant. *Id.,* 557 P.2d at 526. *Maloof* followed *Phillips v. Anchor Hocking Glass Corporation, supra,* which expressed a predominant concern for fairness to both plaintiff and defendant. *Id.* 100 Ariz. at 255, 413 P.2d 732. The *Phillips-Maloof* principle is designed to protect those without sufficient resources to pursue litigation in a foreign state, from having their lawsuits dismissed without having their financial condition considered by the court. Plaintiffs who do not divulge their economic status to the Court should not forfeit their right to sue, even though they may lose the opportunity to have their inability to pursue foreign litigation favorably considered. Since plaintiff Bach has not disclosed information regarding her economic status, this fact should neither penalize nor aid her. It is a neutral factor in the case.

 This Court concludes that Arizona Courts, under this record, would assert jurisdiction over this cause of action. Whether assertion of such jurisdiction complies with federal due process requirements must now be considered.

## FEDERAL DUE PROCESS

The scope of constitutional assertions of jurisdiction has greatly expanded from the "presence within the jurisdiction" requirement of *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1877), to the "minimum contacts" with the forum state and " 'traditional notions of fair play and substantial justice' " test of *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.C. 154, 90 L.Ed. 95 (1945). For example, *McGee v. International Life Insurance,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) held jurisdiction was proper over an insurance company whose sole contact with the forum state was affirmance of a single insurance contract. This expansive trend was curtailed somewhat in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), where the Court held essential:

"... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws."

Martin-Baker argues that it has not purposefully availed itself of the privilege of conducting activities in Arizona. It points out that it exercised no dominion over the ejection seats outside of its native England. Similarly it denies any foreknowledge of the selection of the particular airplane in which its seats were installed, or the location of that airplane. Plaintiff counters that defendant is obligated to defend its products wherever the stream of commerce may take them and that the "purposeful activities" requirement of *Hanson* is "more illusory than real, at least in the context of products liability litigation". (Plaintiff's response to defendant's motion to dismiss, page 7).

---

7. The bare claim of "personal investigations" does not establish a sufficient evidentiary basis for the affiant's conclusions based on these investigations. *C. f.* Rule 56(e) of the Federal Rules of Civil Procedure.

8. Page 4 of defendant's supplementary reply memorandum filed Nov. 1, 1978, includes this statement: "Plaintiffs state there are also other Martin-Baker ejector seats in Arizona. These seats, of course, are unrelated to plaintiff's claim."

The various due process factors to be considered, can generally be placed within five categories:

1. Citizenship and residence of plaintiffs and defendants.
2. Location of events significant to the litigation.
3. Practical availability of alternative preferable forums.
4. Purposeful activity of defendants.
5. Minimum contacts of defendant in the forum state.

There is no precise formula for application of such criteria to a particular set of facts. No improvement to the admittedly vague "traditional notions of fair play and substantial justice" test of *International Shoe* is known to the Court.

Neither plaintiff nor defendants in this case are Arizona citizens or residents. Decedent's accident and death were the only events of significance to this litigation which appear to have taken place in Arizona. In this motion, the Court is unable to find that the "convenience of witnesses" factor benefits either plaintiff or defendant. Since the fatal flight originated in California, and the bulk of Martin-Baker's activity occurred in England, those jurisdictions may be considered as possible alternative forums for this action. Economies to litigants and the judiciary encourage handling the aggregate of operative facts of a transaction in one case. Assuming that Martin-Baker does not "do business" in California,[9] it appears that no United States District Court in that state would have venue. Perhaps it is possible for this matter to be litigated in England. However, the expense and inconvenience caused by trial of a case thousands of miles from the site of take-off, accident, and plaintiff's residence, offends the notion of fairness and makes the Court unwilling to rule out an Arizona forum simply because of the possible alternative of an English forum.

Purposeful activity of a defendant is sometimes measured in terms of "quality" of a defendant's contacts with the forum state. In the products liability context, this basically translates into the economic benefit, foreseen and/or actual, to defendant of sales or use of the manufactured product in the forum state. Martin-Baker, in its oral argument, attempted to distinguish the qualitative degree of a consumer product from that of an instrument of war, (as is Martin-Baker's product). But the purposeful activity inquiry is more properly focused on benefit to defendants than type of use by consumers or operators. In this case, there is no evidence of sales to Arizona consumers. But there is an indication that Martin-Baker received economic benefit, (albeit indirectly), through the use of its ejector seats not only in the skies of Arizona, but many other states.

The foreseeability aspect of the quality of contacts has been treated differently by the varying circuits of the United States Court of Appeals. The recent case of *Hutson v. Fehr Brothers, Inc.*, 584 F.2d 833 (8th Cir. 1978) supports Martin-Baker's position in several respects. The *Hutson* majority opinion [10] apparently distinguishes direct from indirect distribution into a state, and requires conscious solicitation of profit within a state to allow an exercise of jurisdiction. *Id.* at 837. The Ninth Circuit disagrees with the "direct versus indirect" distinction made in *Hutson*. *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231, 235 (9th Cir. 1969). Allowing jurisdiction over a manufacturer whose products arrive in a forum state through indirect distributional channels implicitly accepts a broader definition of "purposeful activity" than applied by *Hutson* which required conscious solicitation of business within a forum state.

---

9. This was the finding based on the record in *Weeks v. Martin-Baker Aircraft*, (S.D.Cal. No. 76–0835–GT filed March 29, 1978) at page 5. (A copy of the decision in *Weeks* is included in the submission of material filed with this Court Nov. 16, 1978.)

10. *Hutson* was decided en banc with four judges concurring in the majority opinion and three judges dissenting.

Martin-Baker's contacts with Arizona which are within the record of this cause of action are:

1. It designed the ejector seat used in the flight which is the basis for this lawsuit.

2. It provided a technical representative, pursuant to contract, stationed at the Davis-Monthan Air Base in Tucson, Arizona from 1967–69.

3. At least some of Martin-Baker's ejector seats are currently employed in planes used in, or over, Arizona.

Martin-Baker's position is similar to that of another English company in *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969). In *Duple* an English subcontractor of motor bodies for tourist coaches challenged the asserted personal jurisdiction of the United States District Court in Hawaii. Plaintiffs in *Duple* had suffered personal injuries allegedly resulting in part from negligent design and manufacture of coaches. The English company had never registered to do business, did business, or owned property in Hawaii. *Id.* at 233–234. It had knowledge that its coaches would be used in Hawaii. *Duple* held that the hardship of defending its product in Hawaii was an attribute of foreign trade and that requiring a manufacturer to defend its product wherever it was placed did not offend the court's notions of fair play or substantial justice. *Id.* at 235.

Judge Ely's dissenting opinion in *Duple,* in part, read:

"Duple did not invoke the benefit or protection of Hawaii law. It conducted the particular activities in England exclusively . . . It pursued no distributional scheme in Hawaii. It is the creation of a friendly foreign nation and conducts its business oceans and a continent away from the forum state. To require it to undergo the hardship now thrust upon it

is, in this case, highly offensive to my 'traditional notion of fair play and substantial justice' and thus violative of its rights under the American Constitution." *Id.* at 239–240.

Judge Ely also foresaw difficulty in enforcing any possible judgment against the foreign corporation under the facts of *Duple.* *Id.* at 239.

Were this a matter of first impression this Court might adopt the position Judge Ely persuasively set forth in *Duple.* But the *Duple* majority was cognizant of the arguments raised in dissent, and the majority opinion of the Court of Appeals binds this Court where no significant distinctions of fact or law can be made. Martin-Baker's claim is barely distinguishable from the claim in *Duple.*[11] It is true that unlike *Duple,* Martin-Baker did not have explicit knowledge that its product would be used in the forum state. But it did know that the equipment sold would be used by the armed forces, presumably over many, if not all states of this nation. It also had previous exposure to the Davis-Monthan Air Force Base in Tucson, Arizona, where a technical representative of the company assisted the Tactical Air Command from 1967–1969. It is only reasonable to conclude that Martin-Baker had knowledge that their product would be used in and/or over Arizona. Under the circumstances of this case, it is charged with such knowledge. Having designed and manufactured its product for use over American skies, Martin-Baker should not be allowed to avoid jurisdiction by claiming no *specific* foreknowledge of future use in Arizona.[12]

■■■ It is also reasonable to conclude that when an injury-causing product is sold with knowledge that it will, at least, partially be used in the sky over a state, it is a purposeful activity. If a defect in design is alleged to have caused an injury, as here,

---

11. The Court in *Duple* made no reference to the citizenship of plaintiffs.

12. "It is sufficient that, as here, the defendant purposefully sets his product or his designs into the stream of commerce, knowing or having reason to know that they will reach the forum state and that they create a potential risk of injury." *Jones Enterprises, Inc. v. Atlas Service Corporation,* 442 F.2d 1136, 1140 (9th Cir. 1971); *see Gill v. Fairchild Hiller Corporation,* 312 F.Supp. 916, 918 (D.N.H.1970).

the fact of others later entering the stream of commerce will not save the designer from being called upon to defend its product in the judicial forum where the event of injury occurred. *Duple, supra,* 417 F.2d at 235; *Metal-Matic, Inc. v. Eighth Judicial District Court,* 82 Nev. 263, 415 P.2d 617, 618–19 (1966).

■ Defendant's motion rightly claims that the recent cases of *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); reemphasize the purposeful activity requirement of *Hanson. Shaffer* involved a Delaware statute which allowed for sequestration of any of defendant's property located within that state in order to assert quasi-in-rem jurisdiction. 433 U.S. at 189, 97 S.Ct. 2569. *Kulko* involved an assertion of jurisdiction by the California courts for the purpose of increasing the amount of child support payments due from a non-resident. The former husband's only contact with the forum state was his consent to allow his child to live in California. 436 U.S. at 94, 98 S.Ct. 1690.

Both *Shaffer* and *Kulko* were logical applications of the Supreme Court opinions in *International Shoe* and *Hanson.* Both *International Shoe* and *Hanson* were decided before the Ninth Circuit decided *Duple.* It appears unlikely that these most recent Supreme Court cases would change the result reached in *Duple.* In *Kulko,* the Court stated:

> ". . . An essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such it is 'reasonable' and 'fair' to require him to conduct his defense in that state. (Citations omitted)." 436 U.S. at 92, 98 S.Ct. at 1697.

Facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Id.*

The affiliating circumstances of this case are sufficient to satisfy due process requirements.

**ORDER**

Defendant Martin-Baker's motion to dismiss for lack of personal jurisdiction is denied.

The Clerk of this Court is directed to mail copies of this Order to all counsel of record herein.